## MARQUEZ *v.* FRISBIE.

1. An injunction or a *mandamus* will not lie against an officer of the Land Department to control him in discharging an official duty which requires the exercise of his judgment and discretion.

2. A court will not, by reason of its jurisdiction of the parties, determine their respective rights to a tract of public land, which are the subject-matter of a pending controversy whereof that department has rightfully taken cognizance, nor will it pass a decree which will render void a patent when it shall be issued.

3. Where the legal title is vested, the equities subject to which the patentee holds it may then be judicially enforced, and where that department has upon the uncontradicted facts committed an error of law by which the land has been awarded to a party to the prejudice of the right of another, the latter is entitled to relief.

4. Where, however, there was a mixed question of law and fact, and the court cannot separate it, so as to ascertain what the mistake of law is, the decision of that department affirming the right of one of the contesting parties to enter a tract of public land is conclusive.

5. A. filed his bill in a State court, alleging that, having the requisite qualifications of a pre-emptor, he had settled upon a tract of public land, but that the proper register and receiver had refused to receive the purchase-money and issue to him a certificate therefor solely upon the ground that the Department of the Interior had on appeal decided that the tract was not subject to pre-emption under the general pre-emption laws, and issued an order authorizing the entry of the tract by B., the defendant, who claimed the right to pre-empt it under a special act of Congress, by which he will be enabled to receive a patent therefor. The bill does not show what proofs were submitted by B., but alleges that, at the instigation of him and others, the Commissioner of the General Land-Office fraudulently, and before the act passed, ordered the surveys of the lands covered by it to be withheld. The bill prayed that A. be declared to be the true owner of the tract and to have a paramount title thereto. B. demurred. *Held*, that the bill was properly dismissed.

ERROR to the Supreme Court of the State of California.

The facts are stated in the opinion of the court.

The case was argued by *Mr. Richard T. Merrick* for the plaintiff in error.

No counsel appeared for the defendant in error.

MR. JUSTICE MILLER delivered the opinion of the court.

The original suit was begun by a petition of the plaintiff in error in the proper court of the State of California, setting forth several reasons why the decision of the Department of

the Interior against his claim as a pre-emptor, and in favor of Frisbie and others, to a certain quarter-section of land, was erroneous, and praying a decree of the court declaring him to be its true owner and his right to the legal title paramount. The case was heard in the inferior State court on a demurrer to this petition, which was sustained, and the judgment there rendered against plaintiff was affirmed by the Supreme Court.

The grounds principally, if not exclusively, relied on by the counsel of plaintiff in this court, who so faithfully and earnestly presented his case, are, 1st, That the Land Department mistook the law of the case and thereby deprived plaintiff of a vested right in the land. 2d, That their decision was obtained by fraud.

The petition of the plaintiff, however, is so badly drawn, and has so many defects, that, sitting here to revise the judgment of two courts of the State of California, we are not able to discover in the petition that the questions argued here are so presented as to enable the court to decide them.

There are also objections besides this fatal to the complaint and the relief asked under it.

One of them is that the principal relief sought, that without which any other would be imperfect, is, that defendants may be declared to hold the land in trust for plaintiff, and compelled to convey the same accordingly. This undoubtedly means the legal title to the land, for he alleges that he was in actual possession at the time of instituting the suit and for a great many years before. But the bill does not show that the defendants, or either of them, ever had the legal title. On the contrary, it is a necessary conclusion from the allegations of the bill that the legal title is in the United States. After referring to the decision of the Secretary of the Interior against his claim, the petition says, that, " in pursuance of this decision, an order was issued authorizing the defendants and other purchasers of the Vallejo title to enter the lands claimed by them; and the said defendants have entered, and will be enabled to receive a patent for, the said quarter-section." It plainly appears from this, first, that defendants had not the legal title; second, that it was in the United States; and, third, that the

matter was still *in fieri*, and under the control of the land officers.

Nothing in record of the case before us gives evidence that any further steps in that department have been taken in the case.

We have repeatedly held that the courts will not interfere with the officers of the government while in the discharge of their duties in disposing of the public lands, either by injunction or mandamus. *Litchfield* v. *Register and Receiver*, 9 Wall. 552; *Gaines* v. *Thompson*, 7 id. 347; *The Secretary* v. *McGarrahan*, 9 id. 298.

And we think it would be quite as objectionable to permit a State court, while such a question was under the consideration and within the control of the executive departments, to take jurisdiction of the case by reason of their control of the parties concerned, and render decree in advance of the action of the government, which would render its patents a nullity when issued.

After the United States has parted with its title, and the individual has become vested with it, the equities subject to which he holds it may be enforced, but not before. *Johnson* v. *Towsley*, 13 id. 72; *Shepley* v. *Cowan*, 91 U. S. 330.

We did not deny the right of the courts to deal with the possession of the land prior to the issue of the patent, or to enforce contracts between the parties concerning the land. But it is impossible thus to transfer a title which is yet in the United States.

If, however, we could suppose that defendants had obtained the patent which the secretary has decided that they are entitled to, that patent and the order on which it issued has in its favor all the presumptions which such an instrument necessarily carries, to which is to be added in this case the plaintiff's allegation that it was founded on a decision made after full contest and repeated hearings, by appeal and otherwise, by the officers to whom the law has specially confided the adjudication of that class of cases.

The rule which governs the courts in the effort to correct any error in such decision has been so repeatedly stated here as to leave no room for doubt or misconstruction.

That principle is that "the decision of the officers of the land department, made within the scope of their authority, on questions of this kind, is, in general, conclusive everywhere, except when considered by way of appeal within that department; and that, as to the facts on which their decision is based, in the absence of fraud or mistake, that decision is conclusive even in courts of justice, when the title afterwards comes in question. But that in this class of cases, as in all others, there exists in the courts of equity the jurisdiction to correct mistakes, to relieve against frauds and impositions, and in cases where it is clear that these officers have, by a mistake of the law, given to one man the land which, on the undisputed facts, belonged to another, to give appropriate relief." *Moore* v. *Robbins*, 96 U. S. 530, 535; *Shepley* v. *Cowan, supra; Johnson* v. *Towsley, supra.*

As we have already said, the argument of counsel is that the bill which was demurred to makes a case of mistake and of fraud and imposition within the meaning of these decisions.

Let us inquire first into the alleged mistake of law by the land department.

The language of this court in *Moore* v. *Robbins*, cited above, is that equity will interfere " when it is *clear* that these officers have, by a mistake of the law, given to one man the land which, on the undisputed facts, belonged to another."

This means, and it is a sound principle, that where there is a mixed question of law and of fact, and the court cannot so separate it as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter is conclusive.

But if it can be made entirely plain to a court of equity that on facts about which there is no dispute, or no reasonable doubt, those officers have, by a mistake of the law, deprived a man of his right, it will give relief.

Looking to the complaint in this case, no such clear statement of a mistake of law is to be found. The counsel in his argument says that the act of March 3, 1863, under which defendants as vendees of Vallejo entered the land, only protected them to the extent of their actual possession, and that the Secretary of the Interior decided otherwise to the

prejudice of plaintiff. But no such allegation is made in the complaint.

That part of the complaint which relates to this subject is, after detailing his efforts before the register and receiver, as follows : —

" But the said register and receiver refused to receive said money and issue a certificate of purchase for said land, as they had previously refused to award the same to him, and had returned the proofs with their said opinion to the General Land Office at Washington.

" The plaintiff's claim, among others, was thus rejected. But the Commissioner of the General Land Office took a different view of the law, and in certain cases, adjudicated by him, declared that the said lands were subject to pre-emption under the general laws, and sustained the rights of pre-emption settlers.

" An appeal was taken in one case to the Secretary of the Interior, who, upon the opinion of Mr. Attorney-General Speed, reversed the decision of the commissioner, and declared that the act of March 3d, 1863, above cited, has the effect to deprive the pre-emption settler of all rights under the general laws of the land. In pursuance of this decision an order was issued authorizing the said defendants and other purchasers of the Vallejo title to enter the lands claimed by them ; and the said defendants have entered and will be enabled to receive a patent for the said quarter-section, although the plaintiff first reduced it to possession, and has resided continuously upon and been in the occupation of it for the last fourteen years, and justly claimed by the plaintiff under the laws of the United States."

No copy of the opinion of the Attorney-General or of the Secretary of the Interior is given, nor is there any other statement than this of what principle of law was then decided. That the decision had any reference whatever to the nature, character, or extent of the possession of the claimants under Vallejo, is a very forced inference from facts not found in the record, for the bill contains no allegation whatever of the proofs of the defendants, or of what they did or did not prove in regard to possession, except that they had not resided on the land.

To set aside the decision of the land department, declare its action to be a violation of the law, and reverse also the judg-

ments of the two courts of California on that ground, demands some stronger evidence that such a decision was made by these officers than is to be found in this petition.

So also as regards the allegations of fraud and imposition.

It is alleged in the vaguest terms that the act of Congress for the benefit of Vallejo and his vendees was procured by the false and fraudulent representations of defendants, but as no attempt is made to invalidate it, and the court is not asked to disregard it, nothing more need be said of this charge.

The next is that before the passage of that act the Commissioner of the General Land Office, at the instigation of defendants, fraudulently and unjustly ordered that the surveys of this land should be withheld · by the surveyor-general. Unless the mere use of the word fraudulent makes his order a fraud, it is impossible to see any wrong in withholding these surveys while Congress was considering how far and in what manner it would relieve Vallejo and his grantees from the effect of a very hard, if technically legal, judgment in favor of the government.

It is also alleged that " defendants will, on receiving the patent, be at liberty to sell said land to innocent purchasers, and thus wholly defeat the just claim and right of plaintiff, who will thus be fraudulently deprived of the land which he has settled and improved under the guarantee of the laws of the land, and which is evidently the intent and purpose of said defendants in prosecuting their unjust and fraudulent claim to the land aforesaid."

It is too obvious for comment that in all this the only use of the words fraud and fraudulent is to stigmatize acts which are adverse to the plaintiff's view of his own rights. But there is not a syllable which defines an act fraudulent in nature, or done or performed under the influence of corrupt motives, or by corrupt means, by the defendant or by any of the land officers who have had to deal with his claim. These officers are not even named. It is idle at this day to suppose that the expensive machinery of a court of equity is to be put in operation for the purpose of reviewing and reversing the judgment of · the tribunals to whom that question is by law entrusted, on such loose, untraversable allegations of fraud in

general.   *United States* v. *Throckmorton*, 98 U. S. 61; Kerr on Fraud, 365.

It is urged in argument that the facts stated by plaintiff in regard to his own settlement, possession, and declaratory statement, show his right to receive a patent for the land, and that on demurrer these are to be taken as true.

We are hardly inclined to believe that if every thing so stated is to be treated as absolute verity that it makes out his right. But it is sufficient to say that plaintiff also shows that all his proofs, together with those on the other side, which he has *not* set out in his petition, were submitted to and passed upon by the land officers, from the register and receiver up to the Secretary of the Interior, and they decided against the validity of his claim.

All this appears from his own petition; so that we return to the proposition, that as he has not shown such a mistake of law, or such element of fraud in that decision as will justify a court of equity in setting it aside, the judgment of the Supreme Court of California refusing that relief is without error, and it is accordingly

*Affirmed.*