## Calvin A. Calhoun v. Oscar H. Violet.

1. HOMESTEAD—*Union Sold ers.* Under the act of March 2 1889, the provision of § 13, which reads as follows: " That * * until said lands are open to settlement by proclamation of the president no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said lands, or acquire any rights thereto," is applicable to honorably discharged Union soldiers to the same extent as it is to all other citizens.

2. EQUITY—*Findings of Fact by Land Department.* Where a proceeding is brought in a court of equity for the purpose of declaring the holder of the legal title to a tract of land entered under the provisions of the homestead laws of the United States, a trustee for the benefit of one who claims a superior title in equity, the facts as found by the land department will be accepted as conclusive by the court.

Suit in equity brought to declare the holder of the legal title a trustee for the benefit of one who claims a superior title in equity. Decision of the lower court affirmed. The opinion states the facts.

21——IV.

*Amos Green & Son,* for plaintiff in error.

*Selwyn Douglas* and *McGreggor Douglass,* for defendant in error.

The opinion of the Court was delivered by

DALE, C. J.: This is an action commenced in the district court of Oklahoma county on March 6, 1895, by Calvin A. Calhoun against Oscar H. Violet for the purpose of obtaining in said court a decree in favor of Calhoun declaring Violet to hold the legal title to lot 10, section 3, in township 11, north, range 3 west, in trust for the use and benefit of Calhoun. The court below sustained a demurrer to the petition and to reverse the ruling thereon, the cause is brought here.

Briefly stated the facts, as set forth in the petition, are as follows: ·On April 23, 1889, Calhoun filed in the Guthrie land office a homestead entry for lots 6, 7, 8, 9 and 10, section 3, township 11, north, range 3 west, situated in Oklahoma county; lots 6, 7, 8 and 9, of such tract lying north and lot 10 thereof lying south of the Canadian river. On February 17, 1890, the commissioner of the general land office suspended the entry for the reason that the tract of land embraced therein lies on both sides of a meandered stream, and in his letter of suspension directed the local office to notify the entryman of such fact and allow him thirty days to elect which portion of his claim he would relinquish, and in the event of a failure to so elect, his entry would be held for cancellation. Calhoun, under the directions contained in the letter from the commissioner of the general land office, on March 17, 1890, relinquished lot 10, the part lying south of the river. Violet, immediately upon such relinquishment, filed a homestead entry therefore, and on December 29, 1893, made his final proof and received

the receiver's final certificate for the tract.    May 15, 1893, Calhoun filed an application to be reinstated in his homestead entry for lot 10, it having been decided in the meantime that the order requiring Calhoun's relinquishment for such lot was erroneous.    No appeal was taken from the order of the commissioner requiring Calhoun to relinquish, and no steps appear to have been taken by him to have his entry reinstated from the time of his relinquishment until he filed his application to be reinstated.    Shortly after April 23, 1889, the date of Calhoun's homestead filing, numerous contests were filed against his entry, in which contests it was alleged that Calhoun was disqualified from entering lands in Oklahoma Territory by reason of being within the boundaries of the territory opened to settlement under the act of March 2, 1889, subsequent to that date, and prior to noon of April 22, following.    After Calhoun's relinquishment to lot 10 these contests appear to have been carried on only with reference to that part of the land lying north of the Canadian river, which was embraced in Calhoun's entry after his relinquishment to the portion thereof lying south of such river.    As the result of such contests Calhoun's entry was finally cancelled upon the ground that he was disqualified to enter the land, and in his final decision upon the motion for review the honorable secretary of the interior uses the following language:

"The testimony of Calvin A. Calhoun himself, as quoted by Messrs. Perkins & Chandler, his attorneys, on pages 17 and 18 of their brief, shows that he arrived at Oklahoma station from Arkansas City on Saturday, April 20, 1889, after dark, and remained there that night, and left for Arkansas City Sunday morning at 8:30 o'clock; that on his arrival at Oklahoma station on Monday, April 22, 1889, he went with his son directly

to the tent which his son had erected on the land in contest; and that he, the entryman, leaving his son in charge of the tent and the land, went immediately to the Guthrie land office and arrived there in time to secure homestead entry No. 19 on said land. Mr. Calhoun's own testimony is fatal to his right to make entry of said land or acquire any right thereto."

In the petition filed in the court below Calhoun alleges that he is an honorably discharged Union soldier, and attaches a copy of his discharge to such effect. It is claimed in the petition and urged as a ground of equitable relief that the secretary of the interior misapplied the law, *first*, in holding that Calhoun was disqualified by reason of being within the Territory during the inhibited period of time; and *second*, that the prohibition contained in the law which excludes those violating the same from acquiring land, is not applicable to an honorably discharged Union soldier. The demurrer to the petition alleges a failure to state a cause of action, and the decision of the lower court sustains the same for that reason.

We think the law properly applied to the facts as found by the land department is sufficient upon which to base a finding that Calhoun was disqualified to enter the land. It is well settled that a person who was within the boundaries of the land thrown open to settlement under the act of March 2, 1889, (25 Stat. U. S. 1005,) subsequent to March 2, 1889, and prior to noon of April 22, 1889, and who, by reason of having been therein gained an advantage over those who remained outside, is thereby disqualified from acquiring any land thrown open to settlement under the provisions of the act of March 2, *supra*. (*Smith v. Townsend*, 1 Okla. 117; and 148 U. S. 490.)

Under the facts as found by the land department, Calhoun had entered upon and occupied a portion of the

lands thrown open to settlement under the provisions of the act of March 2, *supra*, during the inhibited time, and such facts so found are binding upon the courts. (*Johnson v. Towsley*, 13 Wall, 72; *Marquez v. Frisbie*, 101 U. S. 473; *Lee v. Johnson*, 116. U. S. 48, and cases therein cited.)

These facts so found by the land department are sufficient to defeat Calhoun's title before the land department and in the courts also, unless the contention of counsel be correct that honorably discharged Union soldiers are exempted from the prohibition contained in the act of March 2, *supra*. The provision of the law upon which counsel rely is found in § 13 of said act, and is as follows: "Provided that the rights of honorably discharged Union soldiers in the late civil war as defined in §§ 2304 and 2305 of the Revised Statutes shall not be abridged." This is followed by a proviso in the same section which second proviso reads: "And provided further that  *   * until such lands are opened to settlement by proclamation of the president, no person shall be permitted to enter upon and occupy the same, and no person violating this provision shall ever be permitted to enter any of said land or acquire any rights thereto." Counsel for appellant insist that the latter proviso has no limiting effect upon the former. We cannot assent to this contention. It is, we think, the universally accepted rule of construction that the natural and appropriate office of a proviso is to restrain and qualify some matter which precedes, and it should be so confined. (Sutherland on Statutory Construction, § 233).

If, by an examination of the subject-matter of the law, the intent of the makers of the statute be ascertained, then the proviso should always be construed with reference to such intent. In the act of congress of March 2,

*supra*, we find that congress intended in opening these lands to settlement to reserve to honorably discharged Union soldiers certain rights which they then possessed, under §§ 2304 and 2305 Revised Statutes of the United States. In § 2304 the right was given to such soldiers to file a declaratory statement for land, which statement when filed, should operate to reserve the land from any other filing for a period of six months. Other provisions of this section changed the law previous to its adoption in force, to the extent only of permitting a soldier in person or by his agent to file a declaratory statement instead of a homestead entry, which declaratory statement should operate to reserve the land for a period of six months, at which time the soldier might file his homestead entry therefor. To that extent only did it change the law previously in force. Section 2305 provided that the time which the homestead settler had served in the army, navy, or marine corps might be deducted from the time heretofore required to perfect title, or if discharged on account of wounds received or disability incurred in the line of duty, then the term of enlistment should be deducted from the time theretofore required to perfect title, without reference to the length of time he may have served; but no patent in any event was to issue until the settler had resided upon, improved and cultivated his homestead for the period of at least one year after he commenced such improvements and residence. Section 2305 simply modified the law previously in force to the extent of allowing a soldier to have deducted from the five years' residence upon the land, required under the homestead law, the time, not to exceed four years, which he had served in the Union army, navy, or marine corps, and was intended to have no other application. The proviso in § 13 of the act of March 2, *supra*, and which

is heretofore set out, intended to reserve only such rights as above indicated to the Union soldier, and the proviso which followed intended to operate alike upon all persons who would seek lands in Oklahoma Territory, irrespective of the fact that they were or were not honorably discharged Union soldiers. The intention of congress as expressed by the supreme court of the United States in *Smith v. Townsend, supra,* was "to build a wall around the entire Territory, and disqualify from right to acquire under the homestead law any tract within its limits, everyone who was not outside of the wall on April 22. When the hour came, the wall was thrown down, and it was a race between all outside for the various tracts they might desire to take to themselves as homesteads. This law applied to all persons, irrespective of their occupation or condition. To give to the law any other effect would be to give to one class of persons a right not enjoyed by all, which would be abhorrent to our theory of government."

We conclude, therefore, first, that Calhoun disqualified himself from entering or acquiring title to the land in dispute by reason of having entered upon a portion of the lands thrown open to settlement by the act of March 2, *supra,* after the passage of such act, and prior to noon of April 22, following, and further that the disqualification exists as to honorably discharged Union soldiers to the same extent as it does to any other citizen.

The judgment of the lower court is affirmed.

Justice Scott, having presided at the trial of the cause below, not sitting; all the other Justices concurring.