NORTHERN LUMBER CO. v. O'BRIEN et al.

(Circuit Court, D. Minnesota, Fifth Division. August 19, 1903.)

1. PUBLIC LAND—ACTIONS—COURTS—JURISDICTION.

Since the disposition of public lands under the acts of Congress is exclusively vested in the Land Department of the government, which must primarily determine the rights of claimants, courts have no jurisdiction to determine controversies between claimants of such land, the legal title to which has never passed from the United States by the issuance of a patent.

2. SAME—CUTTING TIMBER—INJUNCTION.

Where, in an action to determine conflicting claims to public land, it appeared that the claims of both complainant and defendants to timber thereon were made in good faith and on colorable grounds, and that the defendants threatened and proposed to cut and remove the timber, it was proper for the court to restrain such removal until the land had been patented by the United States, though, by reason of the fact that it had not been patented, the court was without jurisdiction to determine the adverse claims of the parties thereto.

James B. Kerr and M. T. Sanders, for plaintiff.
J. N. Searles, for answering defendants.

LOCHREN, District Judge. This cause came on for final hearing June 15, 1903, upon the bill, the answer of defendants William O'Brien, Albert J. Lammers, and George A. Lammers, and the stipulation of facts on file; the complainant appearing by James B. Kerr, its solicitor, and the answering defendants by J. N. Searles, their solicitor. The defendant Mary E. Coffin, though duly served with the subpœna on the 3d day of January, 1903, has never appeared in the suit, and is in default.

From the admissions in the pleadings and the stipulated facts it appears that by an act of Congress of May 5, 1864 (13 Stat. 64, c. 79), there was granted to the state of Minnesota, to aid in the construction

¶ 1. See Public Lands, vol. 41, Cent. Dig. § 307.

of a railroad from St. Paul to the head of Lake Superior, every alternate section of public land of the United States, not mineral, designated by odd numbers, to the amount of five alternate sections per mile on each side of said railroad on the line thereof within said state. Other provisions of the act, and affecting the terms of the grant, do not affect the issues in this case. Said grant of land became vested in the Lake Superior & Mississippi Railroad Company, which on May 7, 1864, filed in the office of the Commissioner of the General Land Office a map or diagram showing the projected general route of its railroad from St. Paul to a point on Lake Superior. On May 26, 1864, the said Commissioner transmitted a copy of said map or diagram to the register and receiver of the United States Land Office at Duluth, Minn., with his letter informing them of the fact that the Secretary of the Interior had approved the withdrawal of the lands for the railroad, and directing them "to suspend from pre-emption settlement and sale, a body of lands about twenty miles in width as indicated on the enclosed diagram 'A' marked Lake Superior and Mississippi Railroad." The land in dispute, the south half of the southeast quarter of section twenty-seven (27), township fifty-two (52) north, of range fifteen (15) west, of the fourth principal meridian, was coterminous with and within 10 miles of the general route of said railroad, as shown by the said map or diagram. Afterwards, on the 25th day of September, 1866, said Lake Superior & Mississippi Railroad Company filed in the office of said Commissioner of the General Land Office its map of the definite location of its said railroad from St. Paul to Duluth on Lake Superior, whereby it appeared and became definitely settled that the land above described and here in dispute was and is beyond and outside of any lands which could pass to or be obtained by the said railroad company under any of the terms of said land grant.

The Northern Pacific Railroad Company was created by act of Congress of July 2, 1864 (13 Stat. 365, c. 217), and authorized to construct and operate a continuous railroad and telegraph line from a point on Lake Superior, in Minnesota or Wisconsin, westerly, within the United States and north of the forty-fifth parallel of latitude, to Puget Sound, with a branch by the valley of the Columbia river to Portland, Or. It was granted every alternate section of public land, not mineral, designated by odd numbers, to the amount of 20 alternate sections per mile, on each side of said railroad line, as the company might adopt, through territories of the United States, and 10 alternate sections per mile on each side of the railroad, whenever it passed through any state, "whenever on the line thereof the United States have full title, not reserved, sold, granted or otherwise appropriated and free from pre-emption or other claims or rights, at the time the line of said road is definitely fixed and a plat thereof filed in the office of the Commissioner of the General Land Office."

The Northern Pacific Railroad Company afterwards definitely located its entire line from Ashland, on Lake Superior, in Wisconsin, to Puget Sound, and constructed and completed thereon its railroad and telegraph lines. In doing this, on July 6, 1882, it duly filed in the office of the Commissioner of the General Land Office a map or

plat, duly approved by the Secretary of the Interior, showing the line of definite location of its said railroad from Thompson Junction, in Minnesota, to Ashland. On that same date the land here in dispute was and is coterminous with and within 20 miles (10 alternate sections) of that portion of said railroad so definitely located between Thompson Junction and Ashland, and was public land of the United States, not reserved, sold, granted, or otherwise appropriated, and was free from pre-emption, or other claims or rights, and nonmineral in character. The same land was also, at the date of said grant to the Northern Pacific Railroad Company, public land of the United States, and subject to that grant, unless the said withdrawal of lands by direction of the Secretary of the Interior, for the benefit of the Lake Superior & Mississippi Railroad Company, as above set forth, operated to take said lands out of the category of public lands so granted to the Northern Pacific Railroad Company.

On October 17, 1883, said Northern Pacific Railroad Company filed in the United States Land Office at Duluth its certain list, known as Duluth List No. 9, wherein, among other lands, was listed the land in dispute, to bring such lands before the officers of the Interior Department for examination and patenting to that railroad company, which had at the time of filing said list paid the selection fees and fees for surveying said land. On April 6, 1901, the Commissioner of the General Land Office refused to approve said list No. 9, and rejected the same, for the alleged reason that at the date of said grant to the Northern Pacific Railroad Company the lands described in said list were reserved for the Lake Superior & Mississippi Railroad Company by said order of withdrawal, and were therefore not included in the grant. Upon appeal to the Secretary of the Interior said ruling and decision of the Commissioner of the General Land Office was affirmed July 16, 1901.

In the year 1893 said Northern Pacific Railroad Company became insolvent; and in a suit in this court to foreclose mortgages upon its land, property, and franchises, and for the sequestration and distribution of its property for the benefit of its creditors, secured and unsecured, Edward H. McHenry and Frank G. Bigelow were by this court duly appointed receivers of all the property of said railroad company, and among other things authorized to sell the lands of said railroad company in Minnesota, and to make contracts and deeds therefor; and on November 4, 1898, said receivers sold and conveyed by deed to Frederick Weyerhauser and John A. Humbird all the right, title, and interest of the Northern Pacific Railroad Company in said land here in dispute; and the said Weyerhauser and Humbird on March 4, 1899, conveyed to the Northern Lumber Company, a Wisconsin corporation, the complainant herein, all their interest and estate thus acquired in and to all the timber standing and growing on the land in dispute, which timber is of the value of more than $2,000.

All of section 27, township 57 north, range 15 west, being the section containing the land here in dispute, was on November 3, 1859, offered for sale to the public, under proclamation of the President, No. 643, and ever since has remained open to private sale or to entry, unless withdrawn by reason of the matters hereinbefore stated.

On October 2, 1901, defendant Mary E. Coffin applied at the United States Land office at Duluth to select the land here in dispute under the act of Congress of June 4, 1897, in lieu of lands relinquished by her within a forest reservation. Such selection was accepted by said register, and received and transmitted by them to the Commissioner of the General Land Office for his examination and approval for patenting such land to said Mary E. Coffin; and the matter of said selection is still pending before said Commissioner, awaiting such examination and approval.

The principal value of said land is the timber thereon. The defendants William O'Brien, Albert J. Lammers, and George A. Lammers have duly acquired from said Mary E. Coffin all her rights in and to that timber, and intend to cut and remove the same as charged in the bill.

It therefore appears that the title to the land here in dispute is still in the United States, and while the legal title remains in the United States it cannot be adjudged, in a suit to which the United States is not a party, that any one else has a valid equitable claim to the land. The disposition of the public lands, conformably to the acts of Congress, is vested exclusively in the Land Department of the government, which must incidentally determine the rights of claimants. So long as the land is not patented it remains under the jurisdiction of the Land Department, which has still the only power to correct any errors it may have made in respect to any application or contest concerning the lands. It is only after patent is issued, and the jurisdiction of the Land Department has become exhausted, that a court of equity will take any cognizance of the question of who is entitled to the land so patented, upon the facts found by the officers of the Land Department. Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Samson v. Smiley, 13 Wall. 91, 20 L. Ed. 489; Marquez v. Frisbie, 101 U. S. 473, 25 L. Ed. 800; Humbird v. Avery (C. C.) 110 Fed. 465, 471. Complainant's right to the timber on the land rests on the equitable claim of the Northern Pacific Railway Company to the land, and the right of the answering defendants rests on the equitable claim of Mary E. Coffin to the same land, and these are matters still within the sole jurisdiction of the Land Department to determine, and in respect to which this court can give no judgment.

It appearing, however, that the claims of the complainant and of the answering defendants to the timber upon the land in dispute are made in good faith and upon colorable grounds, and that such defendants have threatened and propose to cut and remove said timber, it is proper, in order to preserve the rights of complainant, that such defendants should be enjoined and restrained from cutting or removing such timber until patent for such land shall have been issued by the United States, and until the further order of this court.

Decree will be entered accordingly, but without costs.