## WHITCOMB *v.* WHITE.

ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 185. Argued April 28, 29, 1909.—Decided May 17, 1909.

Where a decision of the Land Department rests on the priority of equitable rights of a contestant it is conclusive upon the courts so far as it involves questions of fact; and on a mixed question of law and fact it is conclusive unless the court can so separate the question that the mistake of law is clearly apparent.

Where the controversy in the Land Department involves the question of whether the first occupant occupied the land for homestead or town-site entry, and there is evidence to support the Secretary's finding, that finding is conclusive on the courts even though the evidence be conflicting.

13 Idaho, 490, affirmed.

THIS was an action brought by John E. White and Roberta B. White, his wife, in the District Court of the First Judicial District of the State of Idaho, in and for the county of Kootenai, to recover the possession of the "northwest quarter of the southwest quarter and lots five (5), six (6) and seven (7), of section two (2), township fifty-five (55) north of range two (2), east Boise meridian."

The defendants' answer was in the nature of a cross bill in equity, admitting that the legal title to the premises was in the plaintiffs, and seeking to charge them as holders of that title in trust for the use and benefit of the defendants. A trial before the court without a jury resulted in a judgment for the plaintiffs for the recovery of possession and damages

for the detention. On appeal to the Supreme Court of the State the award of damages was set aside but the judgment for the recovery of possession was affirmed. Thereupon the case was brought here on error.

The plaintiffs' title was a patent from the United States to plaintiff John E. White based upon a homestead entry. The defendants claimed to have been occupants of the premises as a townsite, and that therefore the land was not subject to entry as a homestead. The application for the homestead entry was formally made at the land office a few hours before that of the probate judge of the county, acting under the statutes as trustee for the occupants of the townsite. A contest was had in the local land office, which resulted in a finding in favor of the plaintiff John E. White. This decision was sustained by the Commissioner of the General Land Office and affirmed by the Secretary of the Interior.

*Mr. Albert Allen,* for plaintiffs in error.

*Mr. George H. Lamar,* with whom *Mr. H. M. Stephens* was on the brief, for defendants in error.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The decision of the Land Department was not rested solely upon the fact that White's formal application was filed a few hours before that of the trustee for the occupants of the townsite, but rather chiefly upon the priority of the former's equitable rights. So far as such decision involves questions of fact it is conclusive upon the courts. *Johnson* v. *Towsley,* 13 Wall. 72, 86; *Shepley* v. *Cowan,* 91 U. S. 330, 340; *Marquez* v. *Frisbie,* 101 U. S. 473, 476; *Quinby* v. *Conlan,* 104 U. S. 420, 425, 426; *Burfenning* v. *C., St. P., M. & O. Ry.,* 163 U. S. 321, 323; *De Cambra* v. *Rogers,* 189 U. S. 119, 120.

And this rule is applied in cases where there is a mixed

question of law and fact, unless the court is able to so separate the question as to see clearly what and where the mistake of law is. As said by Mr. Justice Miller in *Marquez* v. *Frisbie, supra,* p. 476:

"This means, and it is, a sound principle, that where there is a mixed question of law and of fact, and the court cannot so separate it as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter is conclusive." *Quinby* v. *Conlan, supra,* 426.

Further, the thirty-eighth and thirty-ninth findings of the trial court, which were not disturbed by the Supreme Court in its opinion, were:

"38. That the officers of the Interior Department did not exclude any testimony, and there was in said Land Office and said department a full, fair and complete hearing.

"39. That the officers of said Interior Department, of said Land Office, or any or either of them, were not guilty of any fraud or any unlawful conduct."

Clearly the findings of the Land Department cannot be disregarded, especially since they are reinforced by the judgment of the State courts. This court ought not to reverse such judgment except upon the clearest and most convincing evidence of mistake or injustice.

These are among the matters shown by the testimony and upon which the decisions of the Land Department and the State court were based: While the entire quarter-section was public land, and before settlement by any individual, the Northern Pacific constructed its road, crossing Clark's Fork of the Columbia River near the tract. At that time the public surveys had not been extended over this region; indeed, were not so extended until 1893, and the approved plat of the township was not filed in the local land office until November 27, 1895, the day the formal applications of these parties were made. Between 1884 and 1890 some four or five persons settled on the tract, who, with others, at the time of the application for the townsite entry, in 1895, claimed to be then oc-

cupying it for the purposes of trade and business, and to have established a town, which they called Clark's Fork. The right of way of the Northern Pacific was 400 feet in width (13 Stat. 365), and, at first, the houses were upon this right of way, the settlers believing that it was only 200 feet in width. The original occupants were not seeking to establish a town, but to enter the land as a homestead. The first attempt to obtain title to the tract in controversy under the town-site laws was made on October 29, 1895, when a petition signed by ten persons was filed with the probate judge of the county, asking him to secure the tract as a town site. 28 L. D. 412, 415. In 1890 the plaintiff White was the station agent of the Northern Pacific at that place, and in 1891 settled upon the land, making his home outside the right of way, and intending to enter it as a homestead. There was talk between him and some of the other occupants in reference to an apportionment of the quarter-section between them, but no agreement was reached. In other words, the occupation at first was with no thought of a town, but by parties contemplating securing homes under the homestead law. After it had been ascertained that the railroad right of way was 400 feet in width, and in 1893, the settlers were notified by the railroad company of its title. Thereupon some leased from the company while others moved their houses off the company's ground. Under those circumstances questions of fact arose as to the first occupant, and for what purpose he occupied it. In deciding the contest the Secretary of the Interior held (28 L. D. 412, 421):

"In the case at bar, at the time of the survey in the field, White was the only settler on this subdivision except Whitcomb, the other parties at that time being located on the right of way, and as to them White's right, as a prior settler, attached to the entire tract from such time. Any right Whitcomb may have had as a homestead settler by reason of his settlement before survey in the field is lost by his failure to assert the same under the homestead law.

"The evidence shows that after the survey in the field

White made claim to the entire tract and exercised rights of ownership over the same. It was necessary for him to adjust his settlement claim to the lines of the public survey, and in so doing to include the legal subdivision on which his improvements were placed."

Notwithstanding some conflict in the testimony, there was abundant to support the findings of the Secretary of the Interior, and, as heretofore stated, such findings of facts are to be regarded as conclusive in any controversy in the courts.

There was no error in the decision of the Supreme Court of Idaho, and its judgment is

*Affirmed.*