UNITED STATES v. CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS et al.

No. 1686.

Circuit Court of Appeals, Tenth Circuit.

Jan. 11, 1939.

Raymond M. Kell, of Washington, D. C. (Carl McFarland, Asst Atty. Gen., Dan B. Shields, U. S. Atty. for Utah, of Salt Lake City, Utah, Charles E. Collett, Act. Asst. Atty. Gen., Knox Patterson, Sp. Asst. to Atty. Gen., Oscar Provost, of Washington, D. C., and C. W. Leaphart, of Missoula, Mont., on the brief) for the United States.

Robert L. Judd, of Salt Lake City, Utah, and LeRoy B. Young, of Ogden, Utah (Emmett M. Bagley and Paul H. Ray, both of Salt Lake City, Utah, Roy D. Thatcher and Paul Thatcher, both of Ogden, Utah, and B. C. Call, of Brigham, Utah, on the brief), for appellees.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit in equity filed by the United States in its own right and as guardian of certain Indian wards to cancel enumerated instruments of record, remove clouds from title, and quiet title to eleven separate tracts of land situated in Box Elder County, Utah.

The General Homestead Act, approved May 20, 1862, 12 Stat. 392, provides that any person who is the head of a family or has reached the age of twenty-one years, and is a citizen of the United States or has filed his declaration of intention to become such citizen, shall be entitled to enter and to take as a homestead 160 acres or less of land out of the unappropriated public domain of the United States; and it requires that the applicant make affidavit before the proper register or receiver of the land office stating facts which bring him within the class authorized to make such entry.

Section 15 of the Act approved March 3, 1875, 18 Stat. 402, 420, 43 U.S.C.A. § 189, provides that any Indian born in the United States who is the head of a family or has arrived at the age of twenty-one years, and has abandoned his tribal relations, shall, on making satisfactory proof of such abandonment, under rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of the Homestead Act; and further, that title to land acquired by an Indian under its terms shall remain inalienable for a period of five years from the date of the patent issued therefor.

Section 5 of the Act of January 18, 1881, 21 Stat. 315, 317, provides that land acquired by Winnebago Indians of Wisconsin shall be inalienable for a period of twenty years from the date of the issuance of the patent.

Section 1 of the Act approved July 4, 1884, 23 Stat. 76, 96, 43 U.S.C.A. § 190, provides that Indians located on public lands shall have the right to avail themselves of the provisions of the homestead laws as fully and to the same extent as may be done by citizens of the United States; that no fees or commissions shall be charged on account of entries or proofs made by them; and that a patent issued to an Indian under its terms shall declare and be of the legal effect that the United States does and will hold such land for the period of twenty-five years, in trust for the sole use and benefit of the Indian, or in case of his death for his widow and heirs according to the laws of the state or territory in which the land is situated; and that at the expiration of such period it will be conveyed by patent in fee discharged of the trust and free of all charge and incumbrance whatsoever.

The Act of June 21, 1906, 34 Stat. 325, 326, 25 U.S.C.A. § 391, provides that, except as to land situated in the then Indian Territory, the President may in his discretion at any time prior to the expiration of the trust period of any Indian allottee to whom a trust or other patent containing restrictions upon alienation had issued or should thereafter issue continue such restrictions for such period as he may deem best. Pursuant to the authority thus conferred, the restrictions against alienation contained in all patents were extended by a series of one-year executive orders from 1915 to 1919, inclusive; and in 1920, the trust period was continued by like order for a further period of twenty-five years, that is, to 1945.

A small band of Shoshone Indians abandoned their relations with the tribe in Idaho and moved to the then territory of Utah about the year 1865. Eleven members of the band severally made homestead entries on land—now situated in Box Elder County—belonging to the public domain during the years 1881 to 1887, inclusive; they made final proofs during the years 1888 to 1893, inclusive; final certificates issued during the years 1889 to 1893, inclusive; and patents issued during the years 1891 to 1895, inclusive. All of such entries were made under the Act of 1875. In six instances each patent recited that it was issued under the Act of 1884; that the United States would hold the land in trust for the sole benefit of the Indian, or in case of his death for the benefit of his widow and heirs, for a period of twenty-five years from the date of the patent; and that at the expiration of that period it would convey the land in fee discharged of the trust and free of charge or incumbrance. In the other five instances, each patent recited that it was issued under the Act of 1881, and that the land should be inalienable for a period of twenty years from the date on which such patent issued.

The land was placed on the tax rolls of Box Elder County, the record indicating that it was initially assessed in the year 1917; and it was assessed in like manner for subsequent years. Tax deeds issued, and other conveyances were executed and placed of record. All immediate and remote claimants of interest were joined as defendants in this action and their rights, if any, were deraigned through the patents in question.

The trial court found that the several entrymen prepared their respective papers in making final proof with the intention of complying with the Act of 1875; that they were not consulted or given an opportunity to make an election between that act and the Act of 1884; that through inadvertence or mistake five of such patents recited that they were issued under the Act of 1881 and contained a trust period of twenty years, and the other six recited that they were issued under the Act of 1884 and contained a trust period of twenty-five years; and that all of such patents should have issued under the Act of 1875, with a trust period of only five years. The bill was dismissed with prejudice and the United States appealed.

The eleven tracts of land may be divided into two groups and considered separately. One consists of the six tracts in which the patents recited that they were issued under the Act of 1884; and the other consists of the five tracts in which the patents recited that they were issued under the Act of 1881. Before taking up the groups separately it should be said in respect to all of them that, although the entries were made under the Act of 1875, since the final proofs were submitted after the Act of 1884 became effective, each entryman had the privilege of electing whether he would make final proof and secure a patent under the former act with a trust period of only five years, or under the latter with a trust period of twenty-five years. See United States v. Hemmer, 241 U.S. 379, 36 S.Ct. 659, 60 L.Ed. 1055;

Hemmer v. U. S., 8 Cir., 204 F. 898; Seaples v. Card, D.C., 246 F. 501; United States v. Johnson, D.C., 53 F.2d 267; Frazee v. Spokane County, 29 Wash. 278, 69 P. 779; Robinson v. Steele, 95 Wash. 154, 163 P. 486. The decisive question, therefore, is which of the two acts the entrymen severally elected to avail themselves of and intended to invoke in making their final proofs and securing patents. If the former, the five-year trust period fixed therein had expired and the land had become freed of restrictions against alienation before the first executive order extending existing restrictions was entered, before the land was placed on the tax rolls, and before the several conveyances in question were executed; but if the latter, the twenty-five year trust period specified therein had not expired at the time the first executive order extending the trust period was entered, and the land was not freed of restrictions against alienation at the time it was placed on the tax rolls and at the time the several conveyances in question were executed.

Taking up the group in which the patents recited that they issued under the Act of 1884, the finding of the trial court that the entrymen separately intended to make final proof under the Act of 1875 is challenged. The only evidence pointing to such an intention was the fact that they had the privilege of invoking that act, and the statements contained in the affidavits made by them in connection with their proofs. Each affidavit stated, among other things, that the entryman was a native born American citizen of the Shoshone Tribe; that he had abandoned his relations with such tribe; and that he had adopted the habits and customs of civilized life of a citizen of the United States. The two acts deal with two separate and distinct classes of Indians. Indians who have abandoned their tribal relations come within the first and are eligible to make homestead entry without reference to their occupancy or location on public lands, and Indians occupying and being located on public lands come within the second and are eligible to make entry without reference to whether they have abandoned their tribal relations. Abandonment of tribal relations is requisite under the former, and occupancy of public lands is essential under the latter; but neither requires both. Each embraces a separate and distinct class of Indians. The affidavits conformed to the requirements of the earlier act and tended strongly to indicate an intention and purpose to make final proof under its provisions. But that fact did not stand undisputed and uncontroverted. None of the entrymen paid any fees or commissions at the time they made final proof. Receiver's receipts were issued but the amount was left blank in each instance. Payment of fees and commissions was required of Indians under the Act of 1875 in like manner as other homesteaders, but the Act of 1884 expressly exempted them from such payment. The nonpayment of fees and commissions indicated strongly that the proofs were submitted under the later act. In addition, the final certificates each contained the notation, "Issue patent under Act of July 4, 1884, Indian".

Manifestly the facts, and the inferences and deductions reasonably to be drawn from them, presented an issue of fact as to whether the entrymen intended to make proof and secure a patent under the Act of 1875 with a trust period of only five years as authorized by such act, or to avail themselves of the provisions of the Act of 1884 and secure a patent containing a trust period of twenty-five years as authorized by that statute. There was a sharp conflict in the evidence relating to the issue, and the court below resolved it by finding that they intended to proceed under the earlier act. But the patents recited that they were issued under the subsequent act. It authorized the issuance of patents of that kind; they were regular on their face; and they contained a trust period of twenty-five years as fixed in the statute. They must be regarded as an administrative finding that the final proofs were submitted under that act. It has been said that "every patent for public or Indian lands carries with it an implied affirmation or finding of every fact made a prerequisite to its issue * * *." Dickson v. Luck Land Company, 242 U.S. 371, 37 S.Ct. 167, 168, 61 L. Ed. 371. The finding of an administrative department upon such a question of fact committed to it for determination is conclusive on the courts if it is supported by substantial evidence; and that rule applies in cases where there is a mixed question of law and fact, unless the court is able to separate the question in such manner as to see clearly in what manner a mistake of law occurred. A court may review the question only where there was no substantial evidence to sustain the finding, or

where the administrative officers committed a material error of law, or where misrepresentation and fraud were ·practiced upon them. Marquez v. Frisbie, 101 U.S. 473, 25 L.Ed. 800; Whitcomb v. White, 214 U.S. 15, 29 S.Ct. 599, 53 L.Ed. 889; Ross v. Stewart, 227 U.S. 530, 33 S.Ct. 345, 57 L.Ed. 626; Ross v. Day, 232 U.S. 110, 34 S.Ct. 233, 58 L.Ed. 528. The administrative finding was supported by substantial evidence and is conclusive on the courts.

A different situation is presented in respect of the tracts in the other group. The patents covering them recited that they were issued under the Act of 1881 and contained a provision forbidding alienation for a period of twenty years; but that clearly was a departmental inadvertence as that act is confined to members of the Winnebago Tribe in Wisconsin and has no application to other Indians. United States v. Hemmer, supra. The patents cannot be regarded as constituting an administrative finding of intention on the part of the entrymen to make final proof and receive patents either under the Act of 1875 or that of 1884. The finding of the court that they intended to make proof and receive patents under the former act, is challenged for want of support in the evidence. Coming to the facts and circumstances, the applications were made before the Act of 1884 became effective. The affidavits each stated that the applicant was an Indian of the Shoshone Tribe; that he was born in the United States; that he had abandoned his relations with the tribe; and that he had adopted the habits and pursuits of civilized life. They thus conformed in strict measure with the requirements of the Act of 1875. The final proofs were made and submitted after the Act of 1884 became effective; but the affidavits of the entrymen each repeated substantially if not verbatim the statements contained in the former affidavits. Nothing was stated in them concerning the entrymen residing upon public domain as contemplated by the Act of 1884. There was no other affidavit, or writing, or statement of either of the entrymen indicating even remotely a purpose or intention to exercise the privilege of making proof and receiving a patent under the Act of 1884. The two affidavits of each entryman—one made at the time of filing the application and the other at the time of making final proof, one made before the Act of 1884 became existent and the other afterwards—are in perfect harmony each with the other; there is not the slightest difference or discrepancy between them; and they conform in strict measure to the requirements of the Act of 1875, but are wide the mark as to the Act of 1884. Considered together, they argue forcefully an intention to comply with the former act and an absence of purpose to meet the exactions of the latter. On the other hand, the entrymen did not pay any fees or commissions at the time of making their final proofs; and the receiver's receipts and the final certificates in three instances contained references to the Act of 1884 while in the two remaining instances there was no reference or notation to such act.

The case was submitted to the court on stipulations, records, and written statements purporting to detail facts within the knowledge of certain named persons. No witness testified in person, and for that reason the ordinary rule that an appellate court will generally accept the finding of the trial court upon a controverted issue of fact where the court saw the witnesses and observed their demeanor while testifying is without application. Instead, this court is equally capable of examining the evidence and drawing conclusions from it, and is under the duty of doing so. Munro v. Smith, 1 Cir., 259 F. 1; Photoplay Publishing Co. v. La Verne Publishing Co., 3 Cir., 269 F. 730; Nashua Manufacturing Co. v. Berenzweig, 7 Cir., 39 F.2d 896; Kaeser & Blair v. Merchants' Association, 6 Cir., 64 F.2d 575. Regarding the evidence in that manner, and giving due weight to all of the facts and circumstances, we agree with the court below that the recitals contained in the two affidavits indicate clearly and convincingly an intention on the part of the entrymen to comply with the provisions of the Act of 1875 and to receive patents under its terms; and that· such recitals overbear in force and effect the contrary facts and circumstances ˙on which the Government relies.

The defense of limitation interposed under a statute of the State of Utah is not available in a case of this kind instituted by the United States for the enforcement of rights of its Indian wards. United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539; Board of Com'rs of Caddo County v. United States, 10 Cir., 87 F.2d 55. The plea of laches based upon lapse of time is likewise unavailable. United States v. Insley, 130 U.

S. 263, 9 S.Ct. 485, 32 L.Ed. 968; Board of Com'rs of Caddo County v. United States, supra. The only basis of fact for the plea of estoppel is that the United States Attorney for Utah filed petitions for intervention in probate proceedings of the estates of four of the entrymen in which substantially the same facts set forth in the bill in this case were pleaded; and that the petitions were dismissed without prejudice. That is not enough to estop the Government from asserting here rights of its Indian wards in relation to the trust nature of their lands.

The decree is reversed and the cause remanded with direction to enter a decree for the United States as to the six tracts in which the patents recited that they were issued under the Act of 1884, and for the defendants as to the five tracts in which the patents recited that they were issued under the Act of 1881.