[No. 12979.   Department Two.   May 20, 1916.]

THOMAS D. ROBINSON, *Appellant,* v. WESLEY STEELE *et al.,*
*Respondents.*[1]

PUBLIC LANDS—HOMESTEADS—TITLE—FINAL PROOF—PATENT.   The
title of the government passes to a homestead claimant at the time
of making final proof, and such is the effect of the patent, though
issued thereafter; and not at the time when the claimant's right to
make proof matured.

INDIANS—ACQUISITION OF HOMESTEAD — LIMITATIONS ON ALIENA-
TION—STATUTES.   The act of 1884 (23 St. at L. 96) providing that
all patents for homesteads selected by such Indians "as may now be
located on public lands, or as may . . . hereafter so locate,"
shall limit the power of alienation for the period of twenty-five
years, is intended to supplement and modify the act of 1875 (18
Id., p. 420) providing that the title to lands acquired by Indians
under the homestead laws shall not be alienated for a period of five
years; and the same applies to lands for which final proof was not
made at the time the act of 1884 was passed, although the right had
matured.

SAME—LIMITATION ON ALIENATION—EXTENSION—POWER OF CON-
GRESS.   Congress has power to extend the period of limitation upon
the power of alienation of Indian homesteads, between the time of
making the original entry and the perfection of title by final proof.

SAME—LIMITATION ON ALIENATION—REMOVAL—JUDGMENT QUIETING
TITLE—VALIDITY.   Where Indians alienated their homesteads prior
to the expiration of the twenty-five years limiting their power to
do so, a default judgment quieting the title as against the Indians,
upon service by publication, is ineffective, since it is not binding
upon the United States, which holds title in trust for the sole use
of the Indians, under the express provisions of the act of 1884 (23
St. at L. 96).

VENDOR AND PURCHASER—RESCISSION BY VENDEE—ACTS CONSTITUT-
ING.   There are sufficient unequivocal acts of rescission by the pur-
chasers where, upon discovery of failure of title, they timely refused
to pay the balance due upon the first purchase money note at ma-
turity, or other notes declared due, or to receive the deed tendered
to them.

Appeal from a judgment of the superior court for Asotin
county, Miller, J., entered March 24, 1915, upon findings in

[1]Reported in 157 Pac. 845.

favor of the defendants, in an action upon promissory notes, tried to the court. Affirmed.

*Ben F. Tweedy* and *Elmer E. Halsey*, for appellant.

*Fred E. Butler*, for respondents.

PARKER, J.—The plaintiff, Thomas D. Robinson, commenced this action in the superior court for Asotin county, seeking recovery upon five promissory notes for $900 each, payable to him and executed by the defendants, Steele and Kennedy, as the purchase price of three hundred and sixty acres of land situated in that county. The defendants admit the execution of the notes as the purchase price of the land. Their defense is, in substance, that the plaintiff does not have, and never has had, good title to three hundred and twenty acres of the land, nor any power to convey the same, and that there is, therefore, such a failure of consideration for the notes as entitles the defendants to rescind their contract for the purchase of the land and have the notes surrendered and cancelled. Trial in the superior court without a jury resulted in findings and judgment in favor of the defendants, from which the plaintiff has appealed to this court.

The controlling facts may be summarized as follows: On May 6, 1878, Moses and Henry, Nez Perce Indians, having abandoned their tribal relations, each filed in the United States land office, at Walla Walla, his application to enter as a homestead one hundred and sixty acres of the land here in question, it then being public land of the United States subject to homestead entry. These entries were made under the act of Congress of 1875, entitling Indians who have abandoned their tribal relations to acquire homesteads upon the public lands of the United States open to entry under the general homestead laws, subject to limitation upon the right of alienation as expressed in the act of 1875 as follows:

"*Provided, however,* That the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation

or incumbrance, either by voluntary conveyance or the judgment, decree, or order of any court, and shall be and remain inalienable for a period of five years from the date of the patent issued therefor."    18 Statute at Large, Part 3, p. 420.

On July 4, 1884, long before Moses and Henry made final proof entitling them to patents for their homesteads, there became effective, by approval of the president, an act of Congress which in effect amended the act of 1875, in so far as restrictions upon the right of alienation of homesteads acquired by Indians is concerned, as follows:

"That such Indians as may now be located on public lands, or as may, under the direction of the secretary of the interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and the necessary proofs at the proper land offices, one thousand dollars, or so much thereof as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever." 23 Statute at Large, p. 96.

On March 23, 1897, Moses and Henry each made final proof of his residence upon and cultivation of his homestead, which being approved by the register and receiver of the land office at Walla Walla, and the delay in making final proof being found to be excusable, on April 24, 1897, final certificates were issued evidencing the right of Moses and Henry to patents for their respective homesteads. Patents

were accordingly issued in due course on June 10, and
October 18, 1898, respectively, each of which patents con-
tains the following provision:

"This patent is issued upon the express condition that the
title hereby conveyed shall not be subject to alienation or in-
cumbrance either by voluntary conveyance or by judgment,
decree, or order of any court, or subject to taxation of any
character, but shall remain inalienable and not subject to
taxation for the period of twenty years from the date hereof
as provided by act of Congress approved January 18, 1881."

This is the only language of the patents relating to re-
strictions upon alienation, and is manifestly erroneously in-
serted in these patents because it is not the restriction upon
alienation prescribed by either the act of 1875, under which
the original homestead applications were filed, or the act of
1884, under which, as we view the case, the final proofs were
made and patents issued. On December 1, 1906, Moses
executed a warranty deed purporting to convey his home-
stead land to appellant, and on August 1, 1910, Henry exe-
cuted a warranty deed purporting to convey his homestead
land to appellant. On August 24, 1912, appellant entered
into a contract with respondents, Steele and Kennedy, for the
sale of these two one hundred and sixty-acre tracts and an
additional tract of forty acres, for the agreed purchase price
of $4,500, for which respondents executed the five promissory
notes here sued upon, payable on August 24, 1913, 1914,
1915, 1916 and 1917, respectively. These notes, together
with a warranty deed for the land, signed and acknowledged
by appellant and his wife, naming respondents as grantees,
but not delivered to them, were by agreement of all parties
deposited in escrow in the First National Bank of Lewiston,
Idaho. By the terms of the escrow agreement under which
this deposit was made, the bank was to deliver the deed to
respondents upon full payment of all of the notes. Upon the
failure of respondents to pay the notes as they matured, ap-
pellant was, by the terms of the escrow agreement, privileged
to choose one of two remedies, as follows:

"If the said grantees shall at any time fail to pay either of said promissory notes at the time the same become due, and within twenty days after written notice so to do by the grantors, Thomas D. Robinson and May Robinson, then all sums paid under this contract shall be forfeited to the said Thomas D. Robinson and May Robinson and the deed above referred to shall be returned to them, and the promissory notes remaining unpaid shall be returned to the said grantees. If default be made in any of the payments of principal or interest as evidenced by said promissory notes, after twenty days notice in writing so to do, the said grantors may, at their election, deliver said deed to said grantees and declare all sums·evidenced by any remaining unpaid promissory notes as immediately due and payable and sue for the balance due under this agreement."

In October, 1913, the first note having matured and a balance due thereon remaining unpaid, appellant caused the bank to tender to respondents the deed held by it in escrow, and at the same time notified respondents that he elected to declare all of the notes immediately due and payable because of default in the payment of the first note. Soon thereafter this action was commenced. Respondents declined to pay the balance due upon the first note, and also declined to receive from the bank the deed tendered to them, because, a short time prior thereto, they discovered, through the advice of their attorney who had examined the abstract of title of the land recently furnished by appellant, that appellant did not have good title to three hundred and twenty acres of the land because of the legal restrictions upon the power of Moses and Henry to alienate their homesteads consisting of three hundred and twenty acres of the land, less than fourteen years having elapsed since the making and accepting by the land office of the final proof of Moses and Henry entitling them to patents. The contract for the sale of the land from appellant to respondents apparently contemplated that respondents go into possession thereof, which they did to the extent of running some sheep thereon. We think the record warrants the conclusion that they have not been in

possession of the land since the commencement of this action, and that they have at no time since then claimed the right of possession thereof. There is an indorsement upon the first note indicating that $500 was paid thereon on January 6, 1913. By their affirmative answer and cross-complaint, respondents ask judgment against appellant for this sum. This was denied by the trial court, though it is not entirely clear upon what ground. However, this determination by the court is not appealed from by respondents.

The principal question in this controversy is as to the power of alienation possessed by Moses and Henry at the time they executed the deeds purporting to convey their homestead lands to appellant in the years 1906 and 1910. If the restriction upon their power of alienation was for only five years following their final proof and the issuance of patents thereon, as prescribed by the act of 1875, appellant acquired title to the lands by the deeds so executed. If, on the other hand, the restriction upon the power of alienation was for the period of twenty-five years following final proof and the issuance of patents thereon, as prescribed by the act of 1884, such deeds were void and appellant did not thereby acquire title to the lands. Appellant's counsel contend that the five-year limitation, restricting the power of alienation as prescribed by the act of 1875, is alone applicable; while respondents' counsel insists that the twenty-five year limitation, restricting the power of alienation as prescribed by the act of 1884, is applicable. That the twenty-year limitation attempted to be prescribed by the language of the patents above quoted is not applicable, is conceded. These provisions of the patents seem to have been erroneously inserted therein in an attempt on the part of the land department to comply with the act of 1881; which act, however, has reference only to homesteads acquired by the Winnebago Indians of Wisconsin. 21 Statutes at Large 317. This erroneous provision has been noticed in a number of patents for Indian homesteads other than to those of the Winnebago Indians, and held by

the courts to be inapplicable and of no effect. *United States v. Saunders*, 96 Fed. 268; *United States v. Hemmer*, 195 Fed. 790; *Frazee v. Spokane County*, 29 Wash. 278, 69 Pac. 779.

Our problem then is, since the limitation prescribed by the language of these patents has no controlling force, Is the limitation upon the power of alienation that prescribed by the act of 1875 or that prescribed by the act of 1884? In other words, under which of these laws did Moses and Henry acquire title to their homesteads?

Counsel for appellant proceed upon the theory that, since the original applications for the homesteads were filed and settlement made by Moses and Henry under the act of 1875, before the passage of the act of 1884 extending the period of restriction upon alienation to twenty-five years, and since a period of more than five years elapsed after the filing of their applications and commencing their settlement of the land, enabling them to make final proof entitling them to patents therefor before the passage of the act of 1884, they had, prior to the passage of that act, fully earned their patents, and that therefore, though their final proof was made and patents issued long after the act of 1884, their titles should be held to have been perfected prior to the passage of that act and while the act of 1875 was in force prescribing the five-year limitation upon their power of alienation, which five-year limitation had expired long before the execution of their deeds to appellant.

The fallacy of this theory lies in the fact that title to the land is not earned by a claimant under the homestead law until the required final proof is made by him. Section 2291 of the Revised Statutes of the United States, relating to acquisition of land as a homestead, in express terms requires, manifestly as one of the things to be done by a claimant in earning title, that after five years from the date of his original entry he must prove his required residence upon and cultivation of the land, make affidavit that no part of the land has been alienated, and that he will bear true allegiance to the

government of the United States. "Then, in such case, he, she or they, if at that time citizens of the United States, shall be entitled to a patent." It may be conceded in this case, though we do not so decide, that, by the doctrine of relation, the title of the government passes to the claimant as of the time of his making final proof and that such is the effect of the patent, though issued thereafter; but no authority has come to our notice, and we think there is none, holding that title passes from the United States to the claimant under the homestead law prior to the making of his required final proof. This is recognized as the law by the decision of this court in *Bolton v. La Camas Water Power Co.*, 10 Wash. 246, 38 Pac. 1043. We think, therefore, that title to these lands was not earned by Moses and Henry and did not pass to them in any event until they made final proof in the year 1897, long after the passage of the act of 1884 withholding the power of alienation of such Indian homesteads for twenty-five years following the acquisition of title thereto.

It seems to us that the decisions of this court in *Frazee v. Spokane County*, 29 Wash. 278, 69 Pac. 779, and *Frazee v. Piper*, 51 Wash. 278, 98 Pac. 760, are decisive of this branch of the case in respondents' favor. Frazee and wife, Indians, made settlement upon an original homestead entry of land in March, 1883, and made final proof entitling them to patent therefor in May, 1890. In the meantime, the act of 1884 having been passed, it was held that they acquired title to their homestead under the act of 1884 prescribing the limit upon the power of alienation of such homesteads for a period of twenty-five years. It is true, as suggested by counsel for appellant, that they could not have earned and perfected their title by final proof before the passage of the act of 1884, in view of the fact that their original entry was less than five years prior to the passage of the act of 1884. We think, however, that the logic of those decisions is that the prescribed limit upon alienation in the act of 1884 would have been controlling, regardless of the fact that the original entry

might have been made at a sufficiently early date to have enabled Frazee and wife to make final proof entitling him to the patent before the passage of the act of 1884. The controlling fact in these cases was, as we read them, that Frazee and wife did not make their final proof giving them the right to a patent prior to the passage of the act of 1884, regardless of the time when such proof could have been made. In *Frazee v. Piper*, at page 285, the court quoted with approval from the opinion of the Attorney General of the United States as follows:

"I am of the opinion that this act of 1884 was intended to be supplemental to and somewhat in modification of the act of 1875, and that its provisions apply to all entries made under the act of 1875 for which patents had not issued at the time the act of 1884 went into effect. Opinions of Attorneys General, vol. 19, p. 166."

In *Frazee v. Spokane County*, at page 282, that case is distinguished from the decision of the Federal court in *United States v. Saunders, supra,* holding that the five-year limitation of the act of 1875 was applicable because in that case the claimant had fully earned his title by making final proof before the passage of the act of 1884. The decision of Judge Elliott of the Federal court for the Southern District of South Dakota, in *United States v. Hemmer, supra,* is directly in point here, since it deals with conditions arising under the acts of 1875 and 1884 in substance the same as those here involved, wherein the court reaches the conclusion that the twenty-five year limitation upon the right of alienation, as prescribed by the act of 1884, was there applicable.

That Congress has ample power to extend the period of limitation upon the power of alienation of Indian homesteads between the time of the making of the original entry by a claimant and the time of the perfection of his title by making final proof, is settled by the decisions of the Federal courts. *United States v. Allen,* 179 Fed. 13; *United States v. Hemmer, supra; Tiger v. Western Inv. Co.,* 221 U. S. 286. We

conclude that the deeds executed and delivered by Moses and Henry to appellant, long prior to the expiration of twenty-five years following the making of their final proof perfecting their right to patents, conveyed no title whatever to appellant.

In November, 1911, appellant, being doubtful of the validity of his title acquired by the deeds executed by Moses and Henry, instituted an action against them in the superior court for Asotin county, in which action, they being served by publication and being in default, judgment was rendered in appellant's favor, quieting his title as against the claims of Moses and Henry. This judgment is also relied upon by counsel for appellant as being a final adjudication and binding upon all parties concerned as divesting Moses and Henry of all interest and title in and to these lands. The trouble with this contention is that that judgment was not binding upon the United States, the guardian and trustee of Moses and Henry in so far as these lands are concerned. Not only was the United States the guardian of Moses and Henry in so far as the title to these lands are concerned, but by the express terms of the act of 1884, above quoted, the legal title thereof was still in the United States in trust for Moses and Henry, and will so remain until the expiration of the twenty-five year period prescribed by the act of 1884 has expired. If any other authority than the plain language of the act of 1884, above quoted, is necessary to show the right and power of the government of the United States to exercise its control over the title to these lands in so far as the power of Moses and Henry to alienate them is concerned, and ignore the judgment of the superior court of Asotin county purporting to quiet title in appellant, such authority is found in the following cases in the Federal courts wherein such power of the United States was successfully maintained. *United States v. Allen, supra; Bowling v. United States*, 191 Fed. 19; *United States v. Hemmer, supra*. We are of the opinion that the decree of the superior court for Asotin county, purporting to

quiet title in appellant as against Moses and Henry, is void and of no effect, neither as touching the rights of the United States nor those of Moses and Henry, and the superior court of that county correctly so held in this action.

Some contention is made in appellant's behalf that respondents have no right to resist his claimed right to judgment upon these notes for the reason that they have failed to effectually rescind the contract for the purchase of the land by them from appellant. We think this contention is without merit. Their refusal to pay the balance due upon the first note at maturity, and upon the other notes upon appellant's election to declare them due, their refusal to receive the deed tendered to them by the bank in behalf of appellant, their manifest disclaimer of any interest in the land, which we think is deducible from their acts made plain to appellant, all because of the failure of the title of appellant, and, as we think, timely done upon discovery of the failure of appellant's title to the land, are in our opinion sufficient unequivocal acts of rescission on their part. 39 Cyc. 1431.

We conclude that appellant is not entitled to recover upon the notes in this action, and that respondents are entitled to have the notes surrendered and cancelled, as adjudged by the · trial court.

The judgment is affirmed.

MORRIS, C. J., MAIN, and HOLCOMB, JJ., concur.

BAUSMAN, J., concurs in the result.