## UNITED STATES *v.* HEMMER.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 86.  Submitted May 5, 1916.—Decided June 5, 1916.

Where there are no repealing words in a later act, a former act relating to the same or a similar subject is repealed only by implication; and repeal by implication is not favored.

Section 15 of the act of March 3, 1875, c. 131, 18 Stat. 402, permitting Indians under specified conditions to make homestead entries of the public lands, was not repealed or superseded by the Act of July 4, 1884, c. 180, 23 Stat. 96, permitting Indians then located on the public lands to make such entries.

An Indian who made his homestead entry prior to passage of the act of 1884, but who did not make his final proof until thereafter *held* to have made such entry under the act of 1875, and not under the act of 1884, and the period of inalienability was limited to five years under the act of 1875, and not to twenty-five years under the act of 1884.

While Congress has power to, and may if so advised, exercise control over lands to which claims have attached under existing statutes,

the rule has been established that such lands are not regarded as public lands under acts of Congress passed thereafter.

Nothing in the legislative history of the act of July 4, 1884, indicates that it was passed as an amendment to the act of March 3, 1875, or that Congress deemed the earlier act did not sufficiently protect the Indians in their retention of homesteads entered thereunder.

204 Fed. Rep. 898, affirmed.

THE facts, which involve the construction of statutes relating to the right of Indians to make homestead entries on the public lands, are stated in the opinion.

Mr. *Ernest Knaebel* for the United States.

Mr. *Lewis Benson* and Mr. *George Rice* for appellees.

MR. JUSTICE McKENNA delivered the opinion of the court.

This suit was brought in the Circuit Court of the United States, Eighth Judicial Circuit, District of South Dakota, Southern Division, by the United States to remove clouds from the title to certain described lands and to cancel certain instruments purporting to convey the lands and praying that a certain judgment against the lands be declared no lien thereon, the ground of suit being that the conveyances and the judgment were obtained in opposition to the restrictions upon the alienation or encumbrance of the lands imposed by Congress.

After issue joined and hearing had, the District Court, successor of the Circuit Court, entered a decree in accordance with the prayer of the bill. 195 Fed. Rep. 790. The decree was reversed by the Circuit Court of Appeals and the case remanded to the District Court with directions to dismiss the bill. 204 Fed. Rep. 898. This appeal was then prosecuted.

The facts are the following: One Henry H. Taylor,

known and designated sometimes as Henry Taylor, is and was during the times with which the suit is concerned a Sioux Indian of the full blood, belonging to and a member of the Santee Sioux Band of Indians and is not a member of and has never had any connection with the Winnebago Band of Indians.

On October 7, 1878, Taylor entered upon the lands as a homestead, they being part of the public domain and subject to entry under the homestead laws of the United States then in force. He established and continued his residence and made satisfactory proof of all facts required by law.

On June 6, 1890, a patent was issued to him which recited among other things that it was granted upon the express condition that the title conveyed thereby should not be subject to alienation or encumbrance either by voluntary conveyance or by judgment, decree or order of any court or subject to taxation of any character, but should remain inalienable and not subject to taxation for the period of twenty years from the date thereof, as provided by act of Congress approved January 18, 1881, c. 23, 21 Stat. 315. This act applied only to Winnebagoes.

Taylor continued to own the land until August 8, 1908, when he and his wife made a contract with J. E. Peart, one of the appellees, by which they agreed to convey the land to Peart in fee simple by warranty deed for the sum of $2,400, certain land to be accepted in payment of $550 of such consideration. Time was made the essence of the contract and it was made binding upon the heirs, executors, administrators and assigns of the parties.

September 8, 1908, Peart assigned the contract to William W. Fletcher, also one of the appellees herein. After this contract Taylor and wife took possession of the land taken in part payment of the consideration and Peart took possession of the homestead land and paid the consideration in full.

Taylor and his wife refused to convey the homestead
land to either Peart or Fletcher, and the latter instituted
suit against them to compel specific performance, which
suit resulted in a decree compelling such performance, and
a deed was executed to Fletcher by a commissioner ap-
pointed by the court.

February 5, 1909, Fletcher conveyed the land by war-
ranty deed to Louis Hemmer who, in April, 1909, denied
possession to Taylor, who attempted to remove with his
family back on the land, and has since denied possession
to him.

June 10, 1909, the United States issued a patent to
Taylor which recited that he had established a homestead
upon the land in conformity with the act of Congress of
July 4, 1884 (hereinafter set out), and that therefore the
United States, in consideration of the premises and in
accordance with the provisions of said act of Congress,
did and would hold the land (it was described) for the
period of twenty-five years in trust for the sole use and
benefit of Taylor, or, in case of his decease, of his widow
and heirs, according to the laws of the State where the
land was located, and at the expiration of that period
would convey the same by patent to Taylor, or his widow
and heirs, in fee, discharged of the trust and free of all
charge or encumbrances whatsoever.   It was declared
that the patent was issued in lieu of one containing the
twenty-year trust clause dated June 6, 1890, which had
been canceled.

In 1894 and in every year since the county treasurer
of Moody County (appellee Henderson), its auditor (appel-
lee Hornby), and board of county commissioners have
assessed the land for taxation and levied taxes against it
and have caused it to be sold and are asserting the right
to tax the same.   The other appellees assert interest in the
land under tax sales.

It will be observed that Taylor made his preliminary

homestead entry October 7, 1878, by virtue of the provisions of the act of March 3, 1875, c. 131, 18 Stat. 402, 420.[1] The act gave Taylor, as an Indian having the qualifications it described (that is, who was born in the United States, was twenty-one years of age, the head of a family and who had abandoned his tribal relations) the benefits of the homestead law and provided that the title acquired by virtue of its provisions should not be subject to alienation or encumbrance, either voluntarily made or through proceedings in court, and should "remain inalienable for the period of five years from the date of the patent issued therefor."

Taylor, however, did not make his final proof until December 11, 1884, when he paid the final fees and received his final receipt and certificate. Prior to such final proof and compliance with the homestead laws Congress passed the act of July 4, 1884, c. 180, 23 Stat. 96. It provided "that such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws . . . ; but no fees or commissions shall be

---

[1] "SEC. 15. That any Indian born in the United States, who is the head of a family, or who has arrived at the age of twenty-one years, and who has abandoned, or may hereafter abandon, his tribal relations, shall, on making satisfactory proof of such abandonment, under rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of the act entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May twentieth, eighteen hundred and sixty-two, and the acts amendatory thereof, except that the provisions of the eighth section of the said act shall not be held to apply to entries made under this act: *Provided, however,* That the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation or incumbrance, either by voluntary conveyance or the judgment, decree, or order of any court, and shall be and remain inalienable for a period of five years from the date of the patent issued therefor: . . ."

charged on account of such entries or proofs. All patents
therefor shall be of the legal effect and declare that the
United States does and will hold the land thus entered
for the period of twenty-five years, in trust for the sole
use and benefit of the Indian by whom such entry shall
have been made, or in case of his decease, of his widow
and heirs according to the laws of the State or Territory
where such land is located, and that at the expiration of
said period the United States will convey the same by
patent to said Indian, or his widow and heirs as aforesaid,
in fee, discharged of said trust and free of all charge or
encumbrance whatsoever."

Whether the patent to Taylor should have issued under
that act and subject to its restriction of twenty-five years,
or under the act of 1875 and with a limitation upon
alienation of five years, is the controversy in the case.
The Government contends for the act of 1884 and the
contention had the support of the District Court. Appel-
lees contend for the application of the act of 1875 and the
Circuit Court of Appeals approved the contention. We
put to one side the act of 1881, which prescribes a period
of non-alienation of twenty years, as it is conceded that
the act applied only to Winnebagoes, and Taylor is a
Sioux.

The question in the case, then, is the simple one: Which
act applied to and determined Taylor's rights? Or, to
state the question differently and at the same time give
the test of its solution, Was the act of 1875 repealed or
superseded by the act of 1884? There are no repealing
words in the latter act and if it repealed the other act it
must have done so by implication. The implication of
such an effect is not favored and the character of the act
rejects it. Unquestionably the act of 1884 is the more
general and it has criteria of application different from
that of the act of 1875. The acts, therefore, have different
objects. Under the act of 1884 Indians located on the

public lands at the passage of the act or that might under the direction of the Secretary of the Interior, or otherwise, thereafter so locate, might avail themselves of the provisions of the act.

The act of 1875 was more circumscribed. It did not apply to Indians generally but to those of special qualifications, those who had separated themselves from their tribes and the influence of their tribes, who had advanced, therefore, to a higher status and were better prepared to manage their affairs than Indians in general. And it might well have been considered that a five-year restriction upon the alienation of their titles, added to their five years' residence, would give them an appreciation of values sufficient to protect them against the improvidence of their race and the imposition of others.

Therefore, the acts had no repugnancy but had different fields of application, and this, it might be contended, even considering their future operation. Of this, however, we need not express opinion. The act of 1884 applied to Indians then located on the public lands. Regarding Taylor simply as an Indian those words might be considered to be applicable to him; regarding the purpose of the act, which was to confer a benefit, not confirm one, they did not apply to him or to Indians in his situation, for he, and Indians such as he, were the beneficiaries of the prior act and he and other Indians, it may be,—but certainly he—had substantially performed its conditions. What remained to be done, and could have been done before the act of 1884 was passed, was not much more than ceremony.

Nor does the fact that the act of 1884 applied to such Indians as might then be *located upon the public lands* broaden it so as to include Indians who were proceeding under the act of 1875. The rule is established that under acts of Congress concerning the public lands those are not

regarded as such to which a claim has attached, though Congress may, if it be so advised, exercise control over them. *Hastings & Dakota Ry.* v. *Whitney*, 132 U. S. 357, 361, 364; *Hodges* v. *Colcord*, 193 U. S. 192, 196; *Bunker Hill Co.* v. *United States*, 226 U. S. 548, 550. Homestead entries under the act of 1875 cannot, therefore, be considered as having been referred to.

Taylor and those in like situation did not need the aid of the act of 1884. Its language was not of confirmation of rights but was permissive and prospective and related to the initiation and acquisition of rights by a different class. And having this definite purpose, it would be difficult to suppose that, besides, rights acquired under prior laws were intended to be limited without reference to such laws. This view makes it unnecessary to inquire whether Taylor's rights had progressed beyond the point of subjection to the power of Congress, he having, as we have said, completed his residence upon the land, and nothing remaining but to make final proof and receive the assurance of his title, which, we have seen, was his situation nearly a year before the passage of the act of 1884.

Congress has undoubtedly by its legislation indicated a policy to protect Indians against a hasty and improvident alienation of their lands, and the Government has cited a number of statutes. But, as we have pointed out, such policy was satisfied by the act of 1875 and we do not think there is anything in the history of the act of 1884 which sustains the contention that it was intended to be an amendment of the act of 1875 or to indicate that the latter act was not sufficiently potent for the purposes of protection. The recommendation of the Interior Department was for the remission of fees and this was responded to, but confined as we have indicated; and the Interior Department considered it to be so confined, for fees were exacted from Taylor upon his final proof, manifesting

opinion, within a few months after the passage of the act of 1884, that it did not apply to him.

*Decree affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.