[No. 13265. *En Banc.* March 1, 1917.]

MARY FELIX et al., *Respondents*, v. ANASTUS YAKSUM et al., *Appellants*.[1]

INDIANS—PATENTS—RESTRICTION AGAINST ALIENATION—STATUTES. Since an unwarranted provision in an Indian homestead patent restricting the power of alienation will be regarded as surplusage, and since the patent must have read into it the law under which the title was acquired, an Indian homestead patent is subject to the five-year restriction upon the power of alienation provided in the Indian homestead act of March 3, 1875 (18 U. S. Stats., p. 420, § 15), extending the privilege of the general homestead laws to Indians, and not to the twenty-five year limitation provided in the act of July 4, 1884 (23 U. S. Stats., p. 96), where the homestead application recited that it was made under the act of 1875, and the required fees and final proof were offered under that act; notwithstanding the land department first issued a patent under the act of 1884 containing a restriction upon the power of alienation for twenty-five years, but later, in apparent recognition of the error, issued another patent in the usual form under the general homestead laws without any restriction upon the power of alienation.

COURTS—FEDERAL QUESTION—CONTROLLING DECISION OF FEDERAL COURTS—STATUTES—REPEAL—INDIAN HOMESTEAD ACTS. Whether the act of 1875 (18 U. S. Stats., p. 420), making the general homestead laws available to Indians who had abandoned their tribal relations subject to a five-year restriction upon the power of alienation, was impliedly repealed or amended by the act of 1884 (23 U. S. Stats., p. 96), authorizing Indians then located upon the public lands to avail themselves of the privileges of the homestead laws subject to a twenty-five year restriction upon the power of alienation, is purely a Federal question; and the supreme court of the United States having decided that it was not, and that the two acts were not repugnant, the decision is conclusive upon the state courts.

GIFTS—PAROL GIFT OF LAND—EVIDENCE—SUFFICIENCY. A present parol gift, by an aged Indian woman, of twenty acres of land, to her relatives, is sufficiently shown where it clearly appears that it was in accordance with the terms of her will made some time before, that the donor told the donees that the land was theirs and they could improve it as they saw fit, subject to her right to live upon it, and that valuable buildings and improvements were thereupon placed upon the land by the donees, including a house in which the donor lived until her death.

[1]Reported in 163 Pac. 481.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered January 3, 1913, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court. Affirmed.

*Charles F. Wallace, Fred Reeves,* and *Crollard & Crollard,* for appellants.

*Kemp & Baker,* for respondents.

PARKER, J.—This is an action to quiet title to land, in which the plaintiffs, Mary Felix and her husband, claim title by virtue of a parol gift of the land to them from the defendant Anastus Yaksum and the entering into possession of, and making valuable permanent improvements upon, the land in reliance upon such gift. The defendant Anastus Yaksum denied having made the gift, and the other defendants claim interests in the land under certain conveyances made by Anastus Yaksum since the making of the gift as claimed by the plaintiffs. The defendants also claim that Anastus Yaksum, being an Indian woman and having acquired the land as such from the United States, did not possess the power of alienation thereof at the time she is claimed to have made the gift of it to the plaintiffs. The case was before us upon a former appeal, *Felix v. Yaksum,* 77 Wash. 519, 137 Pac. 1037, when the judgment of the superior court was set aside and the cause remanded to that court for a new trial, because the record of the case as then made did not disclose facts enabling us to determine whether or not, at the time of the gift of the land to the plaintiffs as claimed by them, there was any restriction upon the power of Anastus Yaksum to alienate the land. A new trial was accordingly had in the superior court, which resulted in a decree in favor of the plaintiffs, quieting their title and decreeing them to be the owners of the land in fee simple as against all of the defendants, except that Anastus Yaksum was decreed to be entitled to joint occupancy of the land with the plaintiffs during her lifetime and to have a life estate therein to that extent. From this

disposition of the cause, the defendants have again appealed to this court. We here note that Anastus Yaksum died on the 25th day of January, 1916, after the taking of this appeal, and that letters of administration upon her estate have been issued to Charles F. Wallace by the superior court for Chelan county.

The facts disclosed by the record now before us touching the nature of the title of Anastus Yaksum in the spring of 1908, the time when plaintiffs claim to have acquired the land by gift from her, may be summarized as follows: In March, 1885, Yaksum, "An Indian formerly of the Moses (or Wenatchee) tribe," in the state of Washington, having abandoned his tribal relations, made application to the United States land office at Yakima to enter as a homestead the land in question, then situated in Kittitas county, now in Chelan county. This application was made under the act of March 3, 1875, relating to the acquisition of homesteads upon public lands under the general homestead laws by Indians who have abandoned their tribal relations. That the application was intended to be made under the act of March 3, 1875, is evidenced by the express language of the application filed by Yaksum in the land office, and also by indorsements then made by the register and receiver of the land office upon the application and also upon the receipt issued for the filing fee. Yaksum was then married to this appellant, Anastus Yaksum. They had been for several years previous, and were then, residing upon the land. Yaksum continued to reside upon the land until his death, which occurred before the expiration of the five-year period entitling him to make final proof. Anastus Yaksum, his widow, continued to reside upon the land until two or three years prior to her death, which, as we have seen, occurred in January, 1916. On October 29, 1891, she made final proof as the widow of Yaksum, at which time she had resided upon the land for more than ten years. In her final affidavit accompanying her final proof she stated, "I do now apply to perfect my claim thereto [the land] by

virtue of  .  .  .  Act Mar. 3, 1875, . . .." Upon the
final proof so made, the register of the land office issued his
certificate reciting, among other things, "Now therefore be it
known that on presentation of this certificate to the commis-
sioner of the general land office the said Anastus Yaksum
shall be entitled to a patent for the tract of land above de-
scribed." This is a plain unqualified homestead certificate as
if issued to a citizen without restriction as to alienation, ex-
cept that on the margin thereof are indorsed these words,
"Indian homestead, Act Mch. 3, 1875, July 4, 1884," with a
line drawn through the words "Mch. 3, 1875," as though the
words "July 4, 1884" were substituted therefor. The same
indorsement appears upon the margin of the receiver's final
receipt. While these indorsements may indicate the opinion
of some officer of the land department as to. the law under
which she was to take title, they do not evidence her intention
in that regard. At the time of making his original homestead
entry in 1885, Yaksum paid the required fee of $16 therefor,
as evidenced by the receiver's receipt. This was necessary in
order for him to exercise his homestead right under the act
of 1875, though it would not have been necessary for him to
have paid any fees in order to exercise his homestead right,
either as to original entry or final proof, under the act of
1884, as we shall presently see. At the time Anastus Yak-
sum, as the widow of Yaksum, made her final proof in 1891,
she did not pay to the receiver the fees required for the
making of final proof under the act of 1875, but the testi-
mony of witnesses then present renders it certain that she
did then offer to pay such fees, which offer was refused by
the receiver, seemingly because of the opinion of the register
and receiver that no fees were required of her for the making
of her final proof. So the final receipt was issued to her by
the receiver, apparently as a matter of form, with the amount
left blank.

On April 19, 1897, the land department caused to be is-
sued to Anastus Yaksum a patent for the land, which mani-

festly was issued upon her final proof above noticed, which
patent, among other things, contains the following:

"Now Know Ye, That the United States of America, in
consideration of the premises and in accordance with the pro-
visions of the said act of Congress of July 4, 1884, hereby de-
clares that it does and will hold the land above described for
the period of 25 years, in trust for the sole use and benefit of
the said Anastus Yaksum, or in case of her decease, of her
heirs according to the laws of the state where said land is lo-
cated and at the expiration of said period the United States
will convey the same by patent to the said Anastus Yaksum
or her heirs as aforesaid, in fee, discharged of said trust and
free of all charge or incumbrance whatsoever."

We think it will appear as we proceed that this is an er-
roneous statement of the nature of the title to the land then
acquired from the United States by Anastus Yaksum, in
view of the original entry and final proof being in fact made
under the act of March 3, 1875, which act limited her power
of alienation of the land to five years only. On February 3,
1908, the land department caused to be issued to Anastus
Yaksum, as the widow of Yaksum, another patent for the
land in usual form of patents issued under the general home-
stead laws of the United States, purporting to convey the
land to her in fee simple without any restriction upon her
power of alienation. It does not appear therefrom that
Anastus Yaksum is an Indian. It does appear, however, from
photographic copies of records in the general land office,
that this patent was issued upon the application of Anastus
Yaksum, made in August, 1907, which records also seem to
evidence the recognition of the land department of the error
in making the recital above quoted in the patent issued to her
in April, 1897, purporting to convey the land to her in trust
only for a period of twenty-five years under the act of March
4, 1884, and thus limiting her power of alienation during that
period. We have thus reviewed the history of the acquisition
of this land by Anastus Yaksum from the United States in
detail with a view of determining the nature of the title ac-

quired by her under her husband's original entry, her final proof, and the patent issued thereon to her on April 19, 1897. We notice and give consideration to the acts of Anastus Yaksum and the land department occurring since the issuance of that patent only in so far as they may throw some possible light upon the nature of her title then acquired. We here note that this was not Indian allotted land, but land subject to ordinary homestead entry by any citizen, at the time Yaksum made his original entry in 1885.

Did Anastus Yaksum, by her husband's entry, her final proof and the patent issued to her April 19, 1897, acquire title to the land with no other limitation thereon than the five year restriction upon alienation as prescribed by the act of 1875? That act, so far as necessary to be here noticed, reads:

"Any Indian born in the United States, who is the head of a family, or who has arrived at the age of twenty-one years, and who has abandoned, or may hereafter abandon, his tribal relations, shall, on making satisfactory proof of such abandonment, under rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of the act entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May twentieth, eighteen hundred and sixty-two, and the acts amendatory thereof, . . . *Provided, however,* That the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation or incumbrance, either by voluntary conveyance or the judgment, decree, or order of any court, and shall be and remain inalienable for a period of five years from the date of the patent issued therefor." 18 U. S. Stats., p. 420, § 15.

That Anastus Yaksum acquired title with no other limitation than this restriction upon her power of alienation for a period of five years seems plain, unless the language of the patent of April 19, 1897, above quoted, purporting to make it a patent in trust only for the period of twenty-five years as if issued under the following provision of the act of 1884, makes that act the controlling law of her rights:

"Such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and the necessary proofs at the proper land offices, one thousand dollars, or so much thereof as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever." 23 U. S. Stats., p. 96.

It is settled by the decisions that a provision in an Indian homestead patent restricting alienation for which the law of the case furnishes no warrant is mere surplusage having no controlling force upon the title of the grantee, and that the patent must, when its legal effect is sought, have read into it the law under which the title it conveys was acquired, regardless of the limitations which may be expressed in such patent. *Frazee v. Spokane County*, 29 Wash. 278, 69 Pac. 779; *Frazee v. Piper*, 51 Wash. 278, 98 Pac. 760; *Felix v. Yaksum*, 77 Wash. 519, 137 Pac. 1037; *Robinson v. Steele*, 91 Wash. 268, 157 Pac. 845; *United States v. Saunders*, 96 Fed. 268; *United States v. Hemmer*, 195 Fed. 790; *Hemmer v. United States*, 204 Fed. 898; *United States v. Hemmer*, 241 U. S. 379. Whatever lack of harmony there may be in these decisions in other respects, they are all in accord upon this question. Since, therefore, the matter of the title of Anastus Yaksum is to be determined by the law under which it was acquired and not by the words of limitation upon the title

found in the patent of April 19, 1897, our real problem is,
Did she acquire title under the act of 1875, or under the act
of 1884 referred to in that patent? That she and her de-
ceased husband fully performed all of the requirements which
would entitle her to a patent under the act of 1875, and that
both she and her husband fully intended to acquire title
thereunder, is evidenced by their every act up to the time of,
and in the making of, final proof; and while the land depart-
ment, at the time of the issuing to her of the patent of April
19, 1897, seems to have regarded the title as passing to her
under the act of 1884, which in effect would restrict her
power of alienation for a period of twenty-five years, the de-
partment also seems to have recognized, in the issuance of the
patent of February 3, 1908, that the insertion in the first
patent of the twenty-five year trust provision was erroneous.

There have been two decisions of this court and at least
one of a Federal trial court from which it could well be argued
that Anastus Yaksum did acquire title to the land under
the act of 1884, and that therefore the limitation upon her
title was correctly expressed in the patent issued to her on
April 19, 1897. They are the following: *Frazee v. Piper,
Robinson v. Steele* and *United States v. Hemmer, supra.*
Such argument, however, would have to proceed upon the
theory that the act of 1884, in effect, amended the act of
1875 so as to make all Indian homesteads, the final proof of
which are made after the passage of the act of 1884, subject
to the twenty-five year trust provision of that act, in effect
limiting the power of alienation for that period, as was at-
tempted to be done in the patent issued to Anastus Yaksum
on April 19, 1897. We say that such would necessarily be
the only plausible argument in appellant's behalf in this case,
because nothing could be plainer, in the light of the facts we
have noticed, than that every act of Anastus Yaksum and her
husband point unerringly to an intention on their part to
acquire title under the act of 1875, and point equally uner-
ringly to a full compliance on their part in every respect with

the terms of that act, entitling Anastus Yaksum to a patent thereunder, unless it was amended or superseded by the act of 1884, before the making of her final proof. Now was the act of 1875, in effect, amended or changed by the act of 1884? This is manifestly a purely Federal question, and if we shall now find that the higher Federal courts have decided that the act of 1884 did not amend or change the act of 1875, but left that act in full force and effect, we will be bound to so hold, regardless of our previous decisions and those of the Federal trial court above noticed indicating to the contrary; and it would necessarily follow that Anastus Yaksum acquired her title under the act of 1875 with no other limitation thereon than that she would not have the power of alienation of the land for a period of five years, which, as we have seen, would have expired long before her gift of the land to respondents as claimed by them. The case of *United States v. Hemmer*, *supra*, was appealed to the eighth circuit court of appeals, where it was reversed by that court, Judge Sanborn learnedly reviewing the question at length and holding that the act of 1875 was not amended, changed or repealed in any respect by the act of 1884, but remained in full force and effect, so that Indian titles might be acquired thereunder as though the act of 1884 had never been passed. We quote from the learned judge's opinion as follows:

"The act of 1875 was a special law on the subject of Indian homesteads, limited to a small and specific class of Indians, those who had abandoned or should abandon their tribal relations, and it granted the right to homesteads to members of this class only under the restriction of 5 years upon their alienation. The act of 1884 was a general law on this subject of Indian homesteads, and it granted to Indians, whether they had abandoned their tribal relations or not, rights to homesteads subject to restrictions for 25 years on their alienation. The first and most impressive characteristic of the later act, when it is examined to ascertain its effect upon the earlier one, is that it contains no terms or words whatever that indicate any intent on the part of the legislators to amend, modify, repeal, or affect in

any way the act of 1875, the restriction upon alienation there imposed, or any of its other provisions. The act of 1884 contains no reference to the act of 1875, or to any of its provisions, and it does not even contain a clause repealing acts or parts of acts inconsistent with its own provisions.

"Privileges granted to a certain class by special act are not affected by inconsistent general legislation, unless a contrary intent of the legislative body is clearly expressed or indubitably inferable therefrom. But the special act and the general law stand together, the one as the law of the particular class and the other as the general rule. . . .

"Finally: 'All statutes *in pari materia* are to be read and· construed together as if they formed part of the same statute and were enacted at the same time.' Potter, Dwar. St. 145; *Board of Com'rs. v. Aetna Life Ins. Co.*, 90 Fed. 222, 227, 32 C. C. A. 585, 590.

"If the act of 1875 and the act of 1884 be read as one act passed at the same ·time, they provide that there is granted to non-tribal Indians the right to acquire homesteads, upon payment of the officers' fees subject to a restriction on alienation for 5 years, and that there is granted to all Indians the right to acquire homesteads subject to a restriction on alienation for 25 years without the payment of any officers' fees. Every provision of each act has its complete effect, every promise of the government is fulfilled, every right of each homesteader is preserved and protected, and every rule of construction is obeyed. If the act of 1884 be read as an amendment of the act of 1875 and given the effect of an amendment or modification thereof, and of an imposition upon the lands of homesteaders under that act of a restriction upon their alienation for 20 years more than the 5 years fixed by the act of 1875, the offer and promise of the United States contained in that act is broken, the rights of the homesteaders under it are violated, the provision of the act of 1875 which granted to nontribal Indians the right to homesteads with a restriction on alienation of only 5 years, is annulled and the indisputable canons of interpretation which have been cited are disregarded. Our conclusion is that the Act of July 4, 1884, 23 Stat. 96, does not repeal or modify any of the provisions of the Act of March 3, 1875, 18 Stat. 402, 420; that all the provisions of the two acts stand together and remain in force; that the act of 1875

grants to nontribal Indians the right to acquire homesteads with a restriction of only 5 years on their alienation; that the act of 1884 grants to all Indians the right to homesteads with a restriction of 25 years on alienation; and that the latter act did not have the effect to extend the restriction on the alienation of the land of Taylor, a homesteader; under the act of 1875 from 5 years to 25 years, or to affect that restriction in any way." *Hemmer v. United States,* 204 Fed. 898, 906 and 908.

We may here remark that while that decision was rendered by the circuit court of appeals before our decision in *Robinson v. Steele, supra,* it was not then brought to our attention. The decision in the case of *Hemmer v. United States,* in the circuit court of appeals, was appealed from to the supreme court of the United States, and affirmed on June 5, 1916, 241 U. S. 379, after the rendering of our decision in the *Robinson* case, so we also failed in that case to have the benefit of the views of the supreme court of the United States. In affirming the circuit court of appeals in the *Hemmer* case, Justice McKenna, speaking for the supreme court, said:

"The question in the case, then, is the simple one: Which act applied to and determined Taylor's rights? Or, to state the question differently and at the same time give the test of its solution, Was the act of 1875 repealed or superseded by the act of 1884? There are no repealing words in the latter act and if it repealed the other act it must have done so by implication. The implication of such an effect is not favored and the character of the act rejects it. Unquestionably the act of 1884 is the more general and it has criteria of application different from that of the act of 1875. The acts, therefore, have different objects. Under the act of 1884 Indians located on the public lands at the passage of the act or that might under the direction of the Secretary of the Interior, or otherwise, thereafter so locate, might avail themselves of the provisions of the act.

"The act of 1875 was more circumscribed. It did not apply to Indians generally but to those of special qualifications,

those who had separated themselves from their tribes and the influence of their tribes, who had advanced, therefore, to a higher status and were better prepared to manage their affairs than Indians in general. And it might well have been considered that a five-year restriction upon the alienation of their titles, added to their five years' residence, would give them an appreciation of values sufficient to protect them against the improvidence of their race and the imposition of others.

"Therefore, the acts had no repugnancy but had different fields of application, and this, it might be contended, even considering their future operation. Of this, however, we need not express opinion. The act of 1884 applied to Indians then located on the public lands. Regarding Taylor simply as an Indian those words might be considered to be applicable to him; regarding the purpose of the act, which was to confer a benefit, not confirm one, they did not apply to him or to Indians in his situation, for he, and Indians such as he, were the beneficiaries of the prior act and he and other Indians, it may be,—but certainly he,—had substantially performed its conditions. What remained to be done, and could have been done before the act of 1884 was passed, was not much more than ceremony.

"Nor does the fact that the act of 1884 applied to such Indians as might then be *located upon the public lands* broaden it so as to include Indians who were proceeding under the act of 1875. The rule is established that under acts of Congress concerning the public lands those are not regarded as such to which a claim has attached, though Congress may, if it be so advised, exercise control over them. *Hastings & Dakota Ry. Co. v. Whitney*, 132 U. S. 357, 361, 364; *Hodges v. Colcord*, 193 U. S. 192, 196; *Bunker Hill Co. v. United States*, 226 U. S. 548, 550. Homestead entries under the act of 1875 cannot, therefore, be considered as having been referred to.

"Taylor and those in like situation did not need the aid of the act of 1884. Its language was not of confirmation of rights but was permissive and prospective and related to the initiation and acquisition of rights by a different class. And having this definite purpose, it would be difficult to suppose that, besides, rights acquired under prior laws were intended to be limited without reference to such laws. This view

makes it unnecessary to inquire whether Taylor's rights had progressed beyond the point of subjection to the power of Congress, he having, as we have said, completed his residence upon the land, and nothing remaining but to make final proof and receive the assurance of his title, which, we have seen, was his situation nearly a year before the passage of the act of 1884.

"Congress has undoubtedly by its legislation indicated a policy to protect Indians against a hasty and improvident alienation of their lands, and the government has cited a number of statutes. But, as we have pointed out, such policy was satisfied by the act of 1875, and we do not think there is anything in the history of the act of 1884 which sustains the contention that it was intended to be an amendment of the act of 1875, or to indicate that the latter act was not sufficiently potent for the purposes of protection."

We have not overlooked the fact in the *Hemmer* case that the Indian homestead there involved had apparently been fully earned, so far as residence is concerned, before the passage of the act of 1884, while in this case, Yaksum did not make his original entry until after the passage of the act of 1884. While the supreme court of the United States seems to have refrained from expressing its opinion upon the concrete question of the effect of the act of 1884 upon Indian homestead titles initiated and perfected after the passage of that act, as the title here involved was initiated and perfected, we cannot escape the conviction that the logic of the decisions of both the circuit court of appeals and the supreme court lead irresistibly to the conclusion that the act of 1875 remains in full force and effect for the benefit of that special class of Indians therein mentioned, to wit, "Any Indian born in the United States who is the head of a family, or who has arrived at the age of twenty-one years, and who has abandoned, or may hereafter abandon his tribal relations," which is a special class more limited than the general class mentioned in the act of 1884, as pointed out in the opinions of the circuit and supreme courts. We are quite unable to understand how the act of 1875 can remain unre-

pealed and unamended by the act of 1884, which seems to be
the clear holding of both the circuit and the supreme courts,
without at the same time remaining in full force and effect
for the benefit of the Indians therein specified, to initiate
and acquire homesteads as other citizens under the general
homestead law, after the passage of the act of 1884, as well
as before the passage of that act.  It seems plain, in view of
the fact that this is a Federal question and the holding
thereon of the Federal circuit and supreme courts, that we
are now bound to hold that the act of 1884 did not modify
or repeal in any respect the act of 1875, and that Anastus
Yaksum acquired title to the land in question under the act
of 1875, by her final proof and the patent issued thereon on
April 19, 1897, with no other limitation upon her title so
acquired than that she did not have the power of alienation
of the land for five years thereafter.  Whether such five-year
period of limitation commenced to run at the time of making
the final proof in 1891 or at the time of the issuance of her
patent thereon in 1897, is of no consequence in this case,
because, in either event, such five-year limitation expired
many years before she made gift of the land to respondents
as claimed by them.  We conclude that she had the power of
alienation of the land at the time such gift was made.

Our attention has been called to the special act of Congress
approved February 25, 1915, which purports to ratify and
confirm the patent issued to Anastus Yaksum on February
3, 1908, and patents to others "as fee simple patents without
restrictions against alienation as of their dates of issuance."
38 Stat. at Large, part 2, p. 1478.  In view of our conclu-
sion, however, as to the effect of the patent of April 19,
1897, we need not now determine the effect of this act of
Congress.  Were we called upon to do so, an interesting
question would be presented as to whether or not restrictions
upon the power of alienation of Indian homesteads can be
thus affected by retroactive legislation so as to make effective
conveyances made by such Indians before the passage of

such curative act. The decision of this court and that of the supreme court of the United States in *Starr v. Long Jim,* 52 Wash. 138, 100 Pac. 194; 227 U. S. 613, are of interest in that connection. However, we express no opinion upon the question suggested by counsel for respondent as to the effect of this curative act.

Did Anastus Yaksum make an effective gift of the land to respondents in the spring of 1908 as claimed by them? A painstaking review of the evidence convinces us that the trial court was warranted in so deciding. At that time, Anastus Yaksum was about eighty years old and lived with respondents upon the land, respondent Mary Felix being her daughter. All of the parties are related, either by blood or marriage. The land here involved is twenty acres of the Yaksum homestead. In the spring of 1908 and for some years prior thereto, it was manifestly the intention of Anastus Yaksum that respondent Mary Felix should, in the event of the death of her son, Martin, while a minor and she surviving him, have the twenty acres of the homestead here involved, and that other portions of her homestead should go to other children and grandchildren of Anastus Yaksum. She had made some gifts accordingly. In 1905, she made a will in which she devised this twenty acres of the homestead to her grandson, Martin, son of respondent Mary Felix, but in case Martin should die while a minor and should be survived by his mother, Mary, the land was to go to her. Martin having died while a minor, in the spring of 1908 Anastus Yaksum told her daughter Mary, respondent, on several occasions, in substance, that now since Martin had died the land belonged to her, and that she and her husband could go ahead and improve it as they pleased. This intention on the part of Anastus was stated in substance in the presence of several witnesses on different occasions about that time, and under such circumstances as to clearly indicate an intention on the part of Anastus to make a present gift of the twenty acres to respondent Mary Felix. Soon thereafter

respondents moved a house they had onto the land, placing it on a substantial stone and cement foundation of a permanent character, making it a comfortable and substantial farm dwelling. They also built a good barn and planted a large number of fruit trees, and otherwise permanently improved the land, all of which was done by respondents in the belief that the land had been acquired by Mary as a gift from Anastus Yaksum. All of these improvements were placed upon the land with the full knowledge of Anastus Yaksum. There seems to have been an understanding between Anastus Yaksum and respondents that she might remain and make her home upon the land as long as she lived. This she was plainly privileged to do, in so far as any acts thereafter of respondents are concerned. Indeed, they built for her a small house near their own in which she continued to live for some three years following her gift of the land to them.

About three years following the gift of the land to respondent Mary Felix, during which period her mother, Anastus, continued to live with or very near to respondents on the land, an estrangement grew up between Anastus and respondents, resulting in her executing certain deeds purporting to convey the land to appellant Kami Sam, her son-in-law, in trust for herself and the other appellants, and also in her making another will purporting to devise the land. This all occurred after the making of the improvements upon the land by respondents, which we have noticed. The circumstances attending the making of these deeds of trust and this will by Anastus lead us to believe that the controversy has been more one between the other appellants and respondents than between Anastus and respondents. The evidence is by no means free from conflict, but upon the whole record, we think the trial court was fully warranted in concluding that a parol gift had been clearly established by the evidence as claimed by respondents. There are many other facts and circumstances shown by the record, but we deem it unneces-

sary to further notice the facts in detail here, nor do we think it necessary to cite or review authorities touching the law of the case, the questions being largely of fact and the result to be reached dependent upon the peculiar circumstances of the case. We conclude that there has been shown a clear and unmistakable intention on the part of Anastus Yaksum to make a parol gift of this twenty acres of the homestead to respondent Mary Felix, and that, relying upon such gift, respondents have made valuable and permanent improvements upon the land. The law as stated in 20 Cyc. 1194, 1201, 1213, and citation of authorities thereunder, supports our conclusion.

The judgment is affirmed.

ELLIS, C. J., MAIN, MOUNT, HOLCOMB, FULLERTON, MORRIS, and CHADWICK, JJ., concur.