[No. 12979. *En Banc.* March 1, 1917.]

THOMAS D. ROBINSON, *Appellant,* v. WESLEY STEELE *et al.,* *Respondents.*[1]

INDIANS — CONVEYANCES — RESTRICTIONS ON ALIENATION — HOMESTEADS — VENDOR AND PURCHASER — MARKETABLE TITLE. The title to Indian lands, under patents containing no restrictions upon the power of alienation and not showing whether they were issued under the act of 1875 or the act of 1884, through conveyances made by the Indians within the twenty-five year period of restriction upon the power of alienation as provided in the act of 1884, is not free from reasonable doubt, and is therefore not a marketable title, where it appears that, although the homestead applications were made under the act of 1875, which restricted the power of alienation for only five years, upon making final proof, the fees required were not paid nor proof made within two years as required by that act, nor until 14 years thereafter; since the Indian homesteaders may have elected to take patents under the act of 1884, which did not require the payment of any fees.

[1]Reported in 163 Pac. 486.

Appeal from a judgment of the superior court for Asotin county, Miller, J., entered March 24, 1915, upon findings in favor of the defendants, in an action upon promissory notes, tried to the court. Affirmed.

*Elmer E. Halsey* and *Ben F. Tweedy*, for appellant.

*Fred E. Butler*, for respondents.

### ON REHEARING.

PARKER, J.—This case was heard by Department Two and a decision rendered therein affirming the judgment of the trial court on May 20, 1916. The decision of the department is reported in 91 Wash. 268, 157 Pac. 845, where may be found a review of the facts in considerable detail, which we deem unnecessary to repeat here. The recent decisions of the eighth United States circuit court of appeals and the United States supreme court, in the case of *Hemmer v. United States*, reported in 204 Fed. 898, and *United States v. Hemmer*, 241 U. S. 379, has induced us to grant a rehearing *En Banc* in this case, to the end that whatever erroneous views of the department upon the Federal question involved may appear in the light of these recent decisions of the United States circuit and supreme courts may be corrected.

By the decisions of this court in *Frazee v. Spokane County*, 29 Wash. 278, 69 Pac. 779, and *Frazee v. Piper*, 51 Wash. 278, 98 Pac. 760, the law appeared to be that every Indian homesteader making final proof after July 4, 1884, whether his original entry was made before or after that date, necessarily took his title limited by the provisions of the act of Congress of July 4, 1884 (23 U. S. Stats., p. 96), which in effect withheld the grantee's power of alienation for a period of twenty-five years, instead of under the act of Congress of March 3, 1875 (18 U. S. Stats., part 3, p. 420), withholding the grantee's power of alienation for a period of five years only, under which act the original entry might have been made before the passage of the act of 1884. This view of

the law was rested upon the theory that the act of 1875 was modified to that effect by the act of 1884. Such was the interpretation of our former decisions by the department's decision in this case, which interpretation also found support in the opinion of the Attorney General of the United States, quoted therein (Opinions of Attorneys General, vol. 19, p. 166); and also in the decision of the United States district court for South Dakota in the *Hemmer* case. That this view of the law was erroneous seems to have been settled by these recent decisions of the United States circuit and supreme courts in the *Hemmer* case, which hold, in substance, that the act of 1875 was not modified or repealed in any respect by the act of 1884. We have had occasion to review these decisions at some length in our decision in *Felix v. Yaksum, ante* p. 138, 163 Pac. 481, wherein we concluded that, since the act of 1875 remained in full force and effect, as held by the Federal circuit and supreme courts, it gave to the limited class of Indians therein specified a right to initiate and perfect homesteads thereunder with no other limitation upon the title so acquired than that it should be inalienable for a period of five years only following the issuance of patents upon the making of final proof, whether the original entry or final proof be made before or after the passage of the act of 1884.

Before noticing the question of fact as to whether Moses and Henry intended to and did make final proof under the act of 1875 or the act of 1884, with the view of perfecting their titles under one or the other of such acts, let us inquire whether they could, as a matter of law, make proof and acquire title under the act of 1884, in view of the fact that they made their entries under the act of 1875. The act of 1884, by its terms, applies to "such Indians as may now be located upon public lands . . ." apparently without qualification. This would seem to include Moses and Henry, who were then Indians located upon public lands, though in pursuance of original entries made under the act of 1875. The

decisions of the Federal circuit and supreme courts in the *Hemmer* case while holding that the act of 1875 remained unmodified by the act of 1884, in so far as the right of an entryman under the act of 1875 to perfect his title thereunder is concerned, do not, as we interpret them, hold that an Indian located upon public lands under the act of 1875 may not make his final proof and elect to take his title under the act of 1884. . It seems to us highly probable that the Federal courts will hold, when this question is presented to them, that an Indian making his original entry under the act of 1875 may elect to make final proof and take his title under the act of 1884, and thus avoid payment of fees and in effect render his homestead exempt from debts and taxation for a period of twenty-five years instead of for only five years, and forego his right to alienate the land for a period of twenty-five years. This seems as far as we need go in this case touching this question of law, since the concrete question here presented is only one of marketable title as between appellant and respondents, neither the Indians Moses and Henry nor the United States being parties to this action.

Now assuming that the Indians Moses and Henry had the right to elect to make final proof and perfect their titles under either the act of 1875 or the act of 1884, what is there in this record rendering it probable that they elected to perfect their titles under one or the other of these acts? We have seen that they made their original homestead entries in 1878 under the act of 1875. This is evidenced by the statements in their homestead applications to that effect, and also by the fact that the act of 1884 had not then been passed. There is, however, no other fact shown by this record pointing to any intent on the part of Moses or Henry to make their final proofs and perfect their titles under the act of 1875. We have here in evidence duly certified photographic copies of what appear to be the final proofs and all of the proceedings incident thereto before the land department, in which there is not a word of reference to the act of 1875. Of

course, it might be said that the mere fact that final proofs were made upon the homesteads which were originally entered under the act of 1875 raises the presumption that the titles were perfected under that act. It appears, however, that while Moses and Henry made their original entry in 1878, which would call for the making of their final proofs at the expiration of five years following or "within two years thereafter," as contemplated by § 2291 of the Revised Statutes of the United States relating to homestead final proofs, they did not tender or make their final proofs until 1897, fourteen years after the time for making their final proofs under their original entries had expired, as contemplated by § 2291 of the Revised Statutes. It further appears that, when they made their final proofs, neither of them paid the fees that they should have paid to perfect their titles under the act of 1875. This is evidenced by photographic copies of the final receipts issued to them upon final proof by the receiver of the land office, with no sums stated therein as being paid and lines drawn through the blank spaces for the amounts. We have noticed that no fees were required to be paid under the act of 1884. It is true, as noticed in the department decision, that the patents issued upon final proofs did not contain the limitation prescribed either by the act of 1875 or by the act of 1884, but did contain an erroneous limitation which was void. So it cannot be said that the land department made any decision as to which law they took title under, except as the officers of the local land office may have evidenced their opinions that the titles did vest under the act of 1884, by allowing final proof to be made without the payment of fees. Again let us be reminded that we have here only the question of marketable title as between the parties to this action, and that neither the Indians Moses and Henry nor the United States are parties thereto.

In the light of the foregoing, touching the question of under which act the titles passed to the Indians Moses and Henry and their power to alienate the lands when they exe-

cuted their deeds therefor to appellant, can it be said that appellant's title thereto is a marketable title? Plainly respondents were not required to consummate the contemplated sale of the lands to them by appellant and pay the purchase price therefor unless he was able to convey to them a marketable title. In the text of 39 Cyc. 1452, we read:

"A good or marketable title is a title which is free from reasonable doubt either in law or fact."

As to what constitutes a reasonable doubt must necessarily be a question determinable from the particular circumstances appearing in each case. Without reviewing the vast array of decisions dealing with their particular facts touching this question, or attempting to discover a less general statement of the rule than that above quoted from Cyc., we believe it sufficient to say that we are of the opinion that the title of appellant in these lands is not free from reasonable doubt, either in law or fact, and is therefore not a marketable title. Our own decisions, while possibly not directly in point touching the question here presented, lend support to our conclusion. *Hoffman v. Titlow*, 48 Wash. 80, 92 Pac. 888; *Summy v. Ramsey*, 53 Wash. 93, 101 Pac. 506; *Moore v. Elliott*, 76 Wash. 520, 136 Pac. 849; *Weaver v. Esary*, 78 Wash. 640, 139 Pac. 607.

We adhere to the conclusion reached by the department decision of this case, though we recognize error in the view of the law therein expressed in so far as such view is out of harmony with the recent decisions of the Federal circuit and supreme courts in the *Hemmer* case touching the modification of the act of 1875 by the act of 1884.

We conclude that the judgment of the trial court must be affirmed upon the ground that appellant is not able to furnish respondents a marketable title. It is so ordered.

ELLIS, C. J., MAIN, MOUNT, FULLERTON, MORRIS, HOLCOMB, and CHADWICK, JJ., concur.